THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD L. BYRNES, Defendant-Appellant.

(No. 71-385;

Second District—October 18, 1972.

Fred M. Morelli and Patrick J. Dixon, both of Aurora, for appellant.

William J. Scott, Attorney General, of Springfield, and William R. Ketcham, State's Attorney, of Geneva, (James B. Zagel and Robert E. Davison, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Defendant appeals from denial of his petition for a writ of habeas corpus.

Indicted for the offenses of indecent liberties with a seven-year-old child and contributing to her sexual delinquency, defendant, on June 4, 1969, was arraigned and pled not guilty. On July 7, 1969, upon motion by the State, a competency hearing was held pursuant to Ill. Rev. Stat. 1969, ch. 38, sec. 104—2. Evidence indicated that defendant was mentally retarded, the jury returned a verdict finding him incompetent to stand trial and, by court order, defendant was committed to the Department of Mental Health "to remain during the continuance of his mental condition giving rise to his present incompetency to stand trial." [1]

During the December 22, 1970 hearing on a petition for writ of habeas corpus filed on behalf of defendant, there was introduced into evidence a letter from a physician at the Dixon State School (where defendant was in custody), such letter setting forth the medical opinion that defendant would remain mentally retarded and unable to stand trial for the rest of his life. The defense argued that, in light of this knowledge, defendant's commitment had become unlawful as it amounted to an indefinite life sentence without adjudication of guilt. At the close of the hearing, the court denied the petition.

As ground for reversal, it is claimed that defendant's indefinite commitment violated the right to a speedy trial.

Between the time the briefs were filed and the date of oral argument, the United States Supreme Court decided the case of *Jackson v. Indiana,* 32 L.Ed.2d 435 (1972). There, the defendant, a mentally defective deaf mute, had been charged with separate robberies of two women. After receiving a plea of not guilty, the trial court set in motion the Indiana procedures for determining competency to stand trial. Upon a determination that defendant "lack[ed] comprehension sufficient to make his defense," he was committed to the Indiana Department of Mental Health

---

[1] This Court was urged to decide whether certain criminal proceedings should continue in the trial court despite the finding of defendant's incompetence to stand trial. See, American Law Institute's Model Penal Code, Sec. 4.06, Proposed Official Draft, 1962. Resolution of such question is best left to legislative determination.

until it certified defendant sane. The Supreme Court reversed the order of commitment on Fourteenth Amendment grounds, noting that the record offered little or no possibility that defendant would ever be competent to stand trial and that his commitment would, thus, exist for an indefinite period.

Finding that the Indiana statute for determining competency to stand trial on criminal charges had a more lenient standard for commitment and a more stringent standard for release than the statutes governing civil commitment, the Court held the difference deprived defendant of equal protection of the law. Further, since the defendant was committed through proceedings that did not involve any of the articulated bases for exercise of Indiana's power to indefinite commitment, the commitment process was held to have violated due process of law in that defendant "was not afforded any 'formal commitment proceedings addressed to (his) ability to function in society,' or to society's interest in his restraint, or to the State's ability to aid him in attaining competency through custodial care or compulsory treatment, the ostensible purpose of the commitment."

*Jackson* also established that the length of time an accused may be committed cannot exceed a "reasonable period" necessary to determine whether he will attain competency, stating at p. 451:

"\* \* \* a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal \* \* \*."

The similarities between *Jackson* and the instant case are marked, both in the factual situation and in the parallel between the Indiana and Illinois statutes governing commitments.

Procedures for civil commitment, under the Mental Health Code (Ill. Rev. Stat. 1969, ch. 91½, sec. 1—1 *et seq.*) are more stringent for commitment and more lenient for release than procedures for commitment in criminal matters. For civil commitment, a person must be shown to be "in need of mental treatment" or "mentally retarded"; he need only be shown "incompetent to stand trial" to be committed under the criminal statute. A person civilly committed may be discharged when "no

longer in need of hospitalization" (ch. 91½, sec. 10—4); under the criminal statute, there is no provision for release except that proceedings against a defendant will be resumed upon a finding of competency (ch. 38, sec. 104—3(b)). Relevant to competency, the statutes of both states include provisions for pretrial hearings on the issue, examination by doctors, commitment to the Department of Mental Health upon a finding of incompetency, and resumption of criminal proceedings upon restoration of competency. Both states have similar tests for determination of incompetency. In Indiana, trial will be delayed if the defendant does not have "comprehension sufficient to understand the proceedings and make his defense." In Illinois, a person is deemed incompetent if unable to understand the nature and purpose of the proceedings against him or to assist in his defense.

A new "Unified Code of Corrections" recently enacted by the Illinois General Assembly, will take effect January 1, 1973. Article 2 of that law is titled "Diversion for Specialized Treatment"; its sections 1005—2—1 to 1005—2—3 will replace the present ch. 38, secs. 104—1 to 104—3. The new Code substitutes a test of "fitness" to stand trial for the present test of "competence." As noted by the Council Commentary, the change in terminology was necessary to make it clear that fitness speaks only to a person's ability to function within the context of trial; it is not a mental health term dealing with whether an individual should be committed. In line with this change, sec. 1005—2—2 provides that when a defendant is found unfit, he will be remanded to a hospital for proceedings in accordance with the Mental Health Code. Since the Code of Corrections is not yet effective, we, of course, have no power to order proceedings under its provisions. We suggest, however, that it provides the State a procedure whereby accused persons found unfit to stand trial will be committed only after civil proceedings which would be afforded other persons, and thus avoids the equal protection and due process problems present in the instant case.

Defendant herein has been in the custody of the Department of Mental Health since July, 1969. The policy set by the Legislature under the new Unified Code of Corrections (sec. 1005—2—2(b)) indicates that the defendant's commitment has continued beyond a reasonable period of time. This is especially true in light of the fact that the proceedings in the instant case did not determine that the length of defendant's commitment was related to any legitimate State interest.

Defendant's commitment constituted a violation of both equal protection and due process of the Fourteenth Amendment. It is obvious, under the Supreme Court determination in *Jackson*, and the similarities

ascertained, that the defendant herein may not remain committed under the authority of Ill. Rev. Stat. 1969, ch. 38, sec. 104—1 *et seq.*

The order denying the writ of habeas corpus is reversed and the cause remanded to the trial court with directions to proceed in accordance with the views expressed herein.

Reversed and remanded with directions.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.