RITA SIMPSON, Plaintiff-Appellant, *v.* ILLINOIS CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellees.

First District (4th Division)    No. 79-1672

Opinion filed July 10, 1980.—Rehearing denied August 20, 1980.

Richard F. McPartlin, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Rita Simpson, appeals from a judgment of the circuit court of Cook County which affirmed a finding made by the defendant, Civil Service Commission (the Commission) that cause existed for her discharge. On appeal the plaintiff argues there was no cause for discharge because she was physically incapable of resuming work at the end of her leave of absence and that the defendant, Edgar F. Callahan, Director of Financial Institutions of the State of Illinois, acted arbitrarily and unreasonably and abused his discretion in refusing her request for an additional six-month leave of absence.

Testimony at the Commission hearing established that the plaintiff had been employed in the Department of Financial Institutions (the Department) for 24 years. During the four years prior to her discharge she was an Accountant III. In April of 1977 she was assigned to the Currency Exchange Division (the Division). Her duties in that division involved visiting and auditing currency exchanges throughout the State of Illinois.

In June or July of 1978 the plaintiff became ill. From July 3, 1978, until July 17, 1978, she was absent from work. On July 13, 1978, during a telephone conversation with her immediate supervisor, Michael Fryzel, the plaintiff was informed that as of July 17, 1978, all her vacation, sick and personal days would be used up and that beginning July 18 she would be docked for days she did not report to work. The plaintiff asked Fryzel for a leave of absence and he told her to make the request in writing to Director Callahan. The plaintiff wrote such a letter, requesting a six-month leave, and enclosed a report from her physician, Dr. Novotny. The report stated that the plaintiff "is being treated at this office for multiple medical reasons. [She] may not return to her job until further notice due to medical reasons."

On July 24, 1978, Callahan sent a letter to the plaintiff denying her request. It did not mention her medical condition. The letter stated, in part, "Your level of performance has not reached a satisfactory level since I became Director * * * and I feel the interruption of your training

would not be in the best interest of this Department." A performance evaluation dated July of 1978 indicated that the plaintiff's work was below the minimum acceptable level.

In response to the letter from Callahan the plaintiff filed a grievance. By letter dated August 7, 1978, Callahan advised her that the Department of Personnel had recommended that she be granted a leave of absence for one month beginning July 18, 1978, for medical reasons. The letter also stated that the leave would expire on August 18, 1978.

During the one-month leave, the plaintiff applied to the Retirement Board (the Board) for a disability pension. She furnished two medical statements to the Board. Dr. Novotny's report estimated the date when the plaintiff would be able to return to work as "never" and Dr. Cavaungh estimated it to be "indefinite."

The plaintiff did not return to work upon the expiration of her leave on August 18, 1978. In a letter dated August 22, 1978, Callahan advised the plaintiff that her leave had expired and that

"[Y]our letter of resignation due to health effective August 18, 1978 now appears appropriate. Please send the letter to me at my Springfield Office no later than August 31, 1978.

Failure to submit the resignation or to return to work as directed may result in charges for discharge for failure to report to work in accordance with Department of Personnel Rule 3—153. * * *."

The plaintiff responded in a letter to Callahan dated August 31, 1978. That letter stated, in part, "Inasmuch as I am physically unable to return to work as of this date, I would appreciate your granting me a six month leave of absence for medical reasons." On September 5, 1978, Callahan filed charges and a discharge order against the plaintiff.

A hearing was held on November 15, 1978. At the hearing, Fryzel, the plaintiff's immediate supervisor, testified that if the requested six-month leave had been granted, the Division would be "hampered" in meeting its statutory mandate to examine every currency exchange in the State at least once a year. On December 21, 1978, the hearing officer recommended that the plaintiff be discharged. The Commission adopted the hearing officer's findings and recommendations. The plaintiff filed a complaint for administrative review in the circuit court of Cook County and the court affirmed the Commission's decision. The plaintiff appeals from the trial court's order.

The relevant statute provides in part:

"No officer or employee * * * shall be removed or discharged, demoted or suspended for a period of more than 30 days, except for cause, upon written charges approved by the Director of Personnel, and after an opportunity to be heard in his own defense if he makes written request to the Commission within 15 days after

the serving of the written charges upon him. * * *." (Ill. Rev. Stat. 1977, ch. 127, par. 63b111.)

The relevant Department of Personnel Rules provide in part as follows:

"Rule 3—140 Leaves of Absence Without Pay: * * * an agency *may* grant leaves of absence without pay to employees for periods not to exceed 6 months, and such leaves may be extended for good cause by the operating agency for additional 6-month periods with the Director's approval." (Emphasis added.)

"Rule 3—153 Failure to Return: Failure to return from leave within 5 days after the Expiration date may be cause for discharge."

The plaintiff's first argument on appeal is that because she was physically incapacitated at the expiration of her leave of absence, her failure to return to work, without fault on her part, did not constitute "cause" for removal.

"Cause" for discharge was defined by this court in *Hardaway v. Civil Service Com.* (1977), 52 Ill. App. 3d 494, 497-98, 367 N.E.2d 778, 781:

"While the term 'cause' is not defined in the Personnel Code, Illinois courts have construed it to be some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which law and public opinion recognizes as good cause for his no longer holding a position. [Citations.] These shortcomings need not be directly connected with the performance of the work. [Citation.] They must not be trivial or arbitrary or unreasonable."

Although the Illinois courts do not appear to have addressed the issue before us, other jurisdictions have done so. In *Gadue v. Village of Essex Junction* (1975), 133 Vt. 282, 336 A.2d 182, a policeman sued when the village refused to allow him to return to the job following heart surgery. The State statute and the village's personnel rules provided for removal for "cause." The court wrote:

"The more precise question, therefore, is whether 'cause' may be interpreted to include physical disability. We do not hesitate to answer this question in the affirmative. The discharge of public employees physically or mentally unable to perform the duties of their offices has been upheld in numerous decisions." 133 Vt. 282, 283, 336 A.2d 182, 183. See also *McCall v. Pueblo Civil Service Com.* (Colo. App. 1974), 523 P.2d 994.

■■ Under the *Hardaway* definition of "cause," we believe the plaintiff's admitted inability to return to work for an "indefinite" period following her one-month leave of absence constituted a "substantial shortcoming" which the Commission, as trier of fact, could find had a detrimental effect on the discipline and efficiency of the Department. We cannot accept the plaintiff's argument that "cause" for discharge exists only when the employee is somehow at fault. The State, like any other employer, has an

interest in assuring that its employees fulfill their duties on a continuous basis, with as few interruptions for illness as possible. We note also that the legislature has provided for State employees who are unable to continue work due to physical incapacity through the disability pension program. (Ill. Rev. Stat. 1977, ch. 108½, par. 14—124 *et seq.*) The interpretation of "cause" urged by the plaintiff would mandate the granting of a leave of absence whenever an employee is physically unable to work. We cannot accept this interpretation.

In support of her argument that physical inability to perform a job does not constitute sufficient cause for discharge the plaintiff relies on *People ex rel. O'Connor v. Harding* (1922), 224 Ill. App. 198; *People ex rel. Polen v. Hoehler* (1950), 405 Ill. 322, 90 N.E.2d 729; and *Deal v. Police Board* (1972), 3 Ill. App. 3d 622, 279 N.E.2d 492. None of these cases, however, addressed the issue as framed above. *Harding* and *Hoehler* dealt with situations where the employee was forced to resign under duress; in *Deal* the court found the evidence did not support a finding that the plaintiff was incapacitated and inefficient.

The plaintiff next argues the Director's refusal to grant her request for a six-month leave of absence was arbitrary and unreasonable and constituted a manifest abuse of discretion. She contends granting of the requested leave would not be detrimental to the Department while refusing the leave denied her the opportunity to resume work when her disability ceased.

The Personnel Rules give State agencies the power to grant leaves of absence to their employees, apparently for indefinite periods of time. The language of the rules makes clear that this is a discretionary decision. ▉▉ The evidence presented at the hearing establishes that the plaintiff was unable to return to work at the conclusion of her one-month leave of absence. She does not dispute this fact. The plaintiff's immediate supervisor, Fryzel, testified that the Division would have been "hampered" in carrying out its statutory mandate if the requested six-month leave had been granted. The Director and the Commission were in a better position than this court to determine whether the Director properly exercised his discretion in denying the requested leave. In light of the evidence summarized above and our conclusion that physical incapacity to perform the work constitutes sufficient cause for discharge, we cannot say the Director's decision to deny the requested six-month leave constituted an abuse of discretion.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LINN, P. J., and ROMITI, J., concur.