PAUL SWANSON, Plaintiff-Appellant, v. THE BOARD OF POLICE COM-MISSIONERS OF THE VILLAGE OF LAKE IN THE HILLS *et al.*, Defendants-Appellees.

Second District No. 2—89—0654

Opinion filed May 9, 1990.

594

Madsen, Baudin, Stolfi & Sugden, of Crystal Lake (W. Randal Baudin, of counsel), for appellant.

Zukowski, Rogers, Flood & McArdle, of Crystal Lake (David W. McArdle, of counsel), for appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Paul Swanson, appeals from a decision of the circuit court affirming the decision of the board of police commissioners (Board) of the Village of Lake in the Hills (Village) to terminate his employment as a sergeant of the Village's police force.

On appeal, Swanson raises the following issues: (1) whether the decision of the Board is void because a member of the Board had not been properly appointed; (2) whether the proceedings before the Board were unfair because the legal counsel to the Board was from the same firm as an attorney who took part in an interview of Swanson on a charge later brought to the Board; (3) whether the decision of the Board was supported by the manifest weight of the evidence and whether there was sufficient cause to warrant termination of employment; (4) whether Swanson's right to due process was violated when the commission failed to allow him to present evidence in mitigation; and (5) whether the trial court erred in dismissing count II of Swanson's complaint alleging a violation of the Open Meetings Act (Ill. Rev. Stat. 1987, ch. 102, par. 41 *et seq.*). For the reasons stated below, we affirm.

Swanson was discharged from his employment as a sergeant with the Village police department after the Board unanimously found him guilty of the three charges brought against him by Police Chief James

Wales. In count I Swanson was charged with incompetency for his handling of a shooting incident. In count II he was charged with conduct unbecoming an officer and setting a poor example of loyalty, discipline, morale, and *esprit de corps*, as demonstrated by numerous incidents with other officers. In count III he was charged with incompetency based on a clinical psychologist's evaluation that concluded Swanson should not be placed in a situation where he could cause harm to himself or others.

We will discuss the remaining relevant facts to this case within the discussion of each issue.

■ Initially, we address the Board's motion to strike Swanson's brief and dismiss the appeal. The Board first argues plaintiff's brief should be stricken because he violated Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)) by failing to cite to the record for factual allegations made in his brief on pages 17, 35, 36, 38, 40, 41, 42, 44, 52, 59, and 60. While counsel does cite to the record in many instances, 8 of the 11 pages cited by the Board fail to properly cite to the record. The Board also argues that counsel violated Supreme Court Rule 342 (107 Ill. 2d R. 342) by attaching as an appendix to his brief an abstract of evidence from the case. Supreme Court Rule 342(b) clearly provides that an abstract of the record shall not be filed unless it is ordered by the court. Since this court did not order an abstract, this attachment is improper and, therefore, is stricken. Consequently, we need not address the Board's argument that Swanson, by attaching an abstract, has exceeded the 75-page limit for a brief. Finally, the Board argues Swanson violated Rule 341(e)(1) (113 Ill. 2d R. 341(e)(1)) by not listing headings of subpoints raised in his brief and by failing to cite the pages of the brief for each heading.

■ The Board's objections to Swanson's brief are proper. Counsel's failure to abide by the rules certainly is not condoned; however, the rules are not a limitation upon the jurisdiction of a court of review. They are only an admonishment to the parties. (*Brown v. Brown* (1978), 62 Ill. App. 3d 328.) In the interest of justice, we will consider all the arguments raised by Swanson. We trust we will not see such failures from counsel in the future.

Swanson first argues the Board's decision is null and void because one of the commissioners, Douglas Noyes, had not been properly appointed to the commission. Swanson contends Noyes was not a legal commissioner because of the following: (1) the Village did not approve his appointment until January 8, 1987, though Noyes had sat on the Board in regard to Swanson before this time; (2) the Village clerk was not authorized to administer an oath to Noyes; (3) Noyes' oath came

before he was approved by the Village; and (4) there was no evidence to prove Noyes had posted a fidelity bond.

It is not necessary to consider Swanson's contentions because Noyes' actions were at least valid as a *de facto* officer. "A person actually performing the duties of an office under color of title is an officer *de facto*, and his acts as such officer are valid so far as the public or third parties who have an interest in them are concerned." (*People ex rel. Chillicothe Township v. Board of Review* (1960), 19 Ill. 2d 424, 426.) The evidence shows Noyes was appointed to the Board by the Village president on December 13, 1986. He was sworn in by the Village clerk on December 20, 1986, and Noyes stated the Village posted a bond for him. On December 20, 1986, he sat on the Board to decide whether Swanson should be temporarily suspended pending his hearing. Thus, at this time, Noyes was performing the duties of office under color of title. Moreover, on January 8, 1987, Noyes was approved by the Village. The Board did not hear any evidence against Swanson until January 15, 1987. Thus, we find Noyes' votes valid against Swanson.

We also reject Swanson's contentions in regard to Noyes for a second reason which was offered by the trial court. The trial court ruled that, regardless of Swanson's contentions, the Board was comprised of two other legal commissioners, and under the rules and regulations of the board of police commissioners of the Village of Lake in the Hills, State of Illinois, section 5, Quorum, effective November 22, 1985, the other two commissioners made up a quorum. Thus, since they voted against Swanson on all counts, Swanson would have lost even without Noyes' votes. Swanson, citing *Mank v. Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 478, 485, argues that Noyes' participation on the committee is enough to contaminate the process. *Mank*, however, is distinguished. In *Mank*, the court was concerned with the appearance of bias or prejudice where the commissioner was the father of the police chief; the court held that his participation affected the whole board. (*Mank*, 7 Ill. App. 3d at 485.) There is no similar concern in this case. Swanson does not argue that Noyes was biased against him in any way; nor does he argue that the outcome might have been different had Noyes not participated.

Swanson next contends that he did not receive a fair hearing because the attorney who represented the Board was associated in the same law firm with an attorney who participated in an informal inquiry of Swanson prior to the hearing. The evidence shows David McArdle represented the Board at the hearing, and Thomas McGuire, who is not associated with McArdle, was hired by the Village to rep-

resent Chief Wales and prosecute Swanson. Prior to the hearing, Swanson was questioned at an informal inquiry by Chief Wales and Richard Flood, who Swanson contends is a member of the same law firm as McArdle. The inquiry related to the shooting incident which was the subject of count I against Swanson. Swanson argues that Flood was representing Chief Wales and acting in a prosecutorial role against him. The Board contends that there is no evidence in the record to establish that Flood represented Chief Wales at this proceeding. We disagree. A tape recording of the informal inquiry establishes that Flood was present at the inquiry and asked several questions. Also, the prosecutor at the official hearing, Thomas McGuire, in response to Swanson's motion on this issue, stated that a member of the law firm employing McArdle did represent the chief at the informal inquiry.

Swanson does not cite to any case law in support of his contention that Flood's and McArdle's participation violated his right to due process. We are not aware of any case with similar facts, though we do find a line of cases addressing unfair hearings helpful to a review of this issue. It has been held that where the advisor to the Board also acts as the prosecutor, the hearing is not fair and impartial. (*Gigger v. Board of Fire & Police Commissioners* (1960), 23 Ill. App. 2d 433, 439.) In *Gigger*, the same attorney prosecuted the case and ruled on questions of law and evidence. Not one ruling was made by the Board, and members of the Board asked only one question. (*Gigger*, 23 Ill. App. 2d at 437.) The court stated:

"When an attorney representing an administrative agency appears at a hearing conducted by the agency, his acts and conduct are those of the agency. It is not his responsibility to prove guilt, but his task is to assist the agency in arriving at the facts, whether they prove the charges or not. He must display the same respect for fairness as *** the agency." *Gigger*, 23 Ill. App. 2d at 439.

Courts have distinguished *Gigger* and found no denial of due process in cases where the attorney for the Board and the prosecutor were different people acting in separate roles. (*Rizzo v. Board of Fire & Police Commissioners* (1970), 131 Ill. App. 2d 229, 236-37; *Finin v. Board of Fire & Police Commissioners* (1981), 98 Ill. App. 3d 879, 883; *Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 402.) In *Rizzo*, the Board was represented by its own independent attorney, and the complainant was represented by his own choice of attorney, who prosecuted the case. The court found that, where the attorney for the Board merely advised the chairman

as to the law, the chairman ruled on all questions of law and evidence, and the Board fully participated in the questioning, the process was fair and impartial. *Rizzo*, 131 Ill. App. 2d at 237.

■ In the instant case, the prosecutor and the advisor to the Board at the hearing were different people acting in separate roles, and they were not associated. Thus, this case is not like *Gigger*. Here, we have an association between the advisor to the Board and an attorney who took part in an informal inquiry prior to the hearing. We find on the facts of this case that Flood's participation prior to the hearing did not create an unfair hearing for Swanson. We do not condone a practice where law firm associates act in dual roles at any stage of an administrative proceeding; however, as we will elaborate below, we are satisfied from a review of the hearing that Swanson did receive a fair and impartial hearing.

■ In *Gigger* the court stated the fundamental concepts of a fair hearing are the opportunity to be heard, the right to cross-examine adverse witnesses, and the right to impartiality in rulings upon the evidence. (*Gigger*, 23 Ill. App. 2d at 439.) We are convinced the hearing provided these rights to Swanson. McArdle's role was limited to advising the Board on procedure and evidentiary questions. He rarely made decisions for the Board; normally, he advised the Board, and the Board made its own decision after considering his advice. Contrary to Swanson's assertions, the record demonstrates McArdle was fair and impartial; both parties were favored and disfavored by his recommendations. Finally, the lengthy record reveals that Swanson was given wide latitude in cross-examination and the presentation of his case. The record clearly establishes that the process was fair and impartial.

Swanson also argues that McArdle's law firm acted as the municipal attorneys and prosecuting attorneys for the Village; therefore, under the Illinois Municipal Code, McArdle should not have been allowed to represent the Board. Section 10—2.1—25 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 10—2.1—25) provides:

> "The municipal attorney, in the event there is a separate attorney designated as a prosecutor for such municipality, shall represent the Board unless the Board is authorized by the municipality to employ its own attorney, and such attorney shall handle prosecutions before the Board, but in the event that the municipal attorney shall both represent the municipality and be prosecutor in such municipality, then and in such event the governing body is hereby authorized to employ an attorney of its own choosing to represent said Board."

Swanson contends this statute requires McArdle and his firm to pros-

ecute in administrative hearings, and, therefore, the Board should have hired its own attorney in this case. The Board argues there is no evidence in the record to show exactly what McArdle's or his firm's standing relationship was with the Village. We agree. Since there was no competent evidence on this point, we find the record fails to establish the exact relationship between the Village and McArdle's firm.

Assuming *arguendo* that McArdle's law firm did in fact function as the Village attorney and as a prosecutor in the early stages of the investigation, the statute indicates that McArdle's law firm should have prosecuted at the hearing, and the Village should have hired another attorney for the Board. This would have been the preferred practice. Nonetheless, we do not believe a failure to follow this statute to the letter in this case requires reversal. The true concern in this case is whether Swanson received a fair hearing. As stated in *O'Malley v. Board of Fire & Police Commissioners* (1989), 182 Ill. App. 3d 1019, 1022-23, "[t]he statute seeks to avoid real or apparent conflicts of interest, where the attorney who represents the interests of the Board, and advises the Board on the law, is the same person who presents the case against the respondent; the statute seeks to prevent having the judge be the prosecutor." Here, the same person did not act as prosecutor and judge at the hearing. Since the same person or persons associated in the same law firm did not act as the advisor to the Board and the prosecutor at the hearing, we find that any failure to follow the letter of the statute did not prejudice Swanson.

Finally, on this issue, we find no merit to Swanson's contention that under Rule 5—105 of the Code of Professional Responsibility (107 Ill. 2d R. 5—105), McArdle and Flood could not participate in the proceedings against him. Section 5—105 requires an attorney to refuse to represent a client where that representation will present a conflict of interest with another client. (107 Ill. 2d R. 5—105(a).) We find that since Swanson was not a client of either Flood or McArdle, he has no standing to assert a violation of Rule 5—105.

Swanson next contends the findings against him were trivial and insufficient to terminate his employment. The review of an administrative agency's decision regarding discharge is a two-step process. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105.) The court must first determine whether the agency's finding of guilt is contrary to the manifest weight of the evidence. Second, it must determine if the findings of fact provide a sufficient basis for the agency's conclusion that there is cause for discharge. (*Walsh*, 96 Ill. 2d at 105.) The record demonstrates that the findings

of the court were not against the manifest weight of the evidence.

The first charge against Swanson involved his failure to properly handle a shooting incident. Swanson responded to a report of a shooting at approximately 2 a.m. He met with the complainant, Raymond Kemp, who told him his wife had gone to James Kessel's house, and he attempted to enter Kessel's house through the window when Kessel shot at him six times with a .44 magnum, trying to kill him. Swanson went to the house to talk with Kessel. Kessel admitted he fired a gun, but he stated he fired it only one time as a warning shot, pointing the gun up in the air out the window. He also stated the gun was a nine millimeter pistol. A sheriff deputy from McHenry County found a nine millimeter casing outside the window. Swanson told Kessel he was under arrest and brought him to the police station. Kemp's wife was brought to the station in another car, and Mr. Kemp drove to the station in his own car. Kemp's six-year-old daughter accompanied him.

Driving to the station, Swanson learned from Kessel that Kemp was driving on a suspended license. After corroborating this information, Swanson charged Kemp with driving with a suspended license. He issued Kessel a ticket for discharging a firearm within the Village.

Swanson had been told by Chief Wales to contact him if anything unusual happened while he was on duty; Swanson did not call him after this incident. He also did not call the State's Attorney's office. Swanson testified he believed the incident was merely a domestic situation. He did not believe Kessel tried to kill Kemp with several shots as Kemp stated; he believed Kessel fired one shot as a warning. Therefore, he saw no need to call the chief or the State's Attorney's office in the middle of the night.

The Board found Swanson failed to notify the chief as instructed, failed to contact a representative of the State's Attorney, failed to conduct an appropriate crime scene search, failed to seek or obtain the gun used in the shooting, failed to interview a six-year-old witness, failed to obtain a written statement, and failed to make an arrest for attempted murder, aggravated assault or reckless conduct. Swanson does not contest these findings. He stated during a preliminary investigation in regard to his handling of the incident that he "blew it."

On appeal, however, he argues that his handling of the incident was reasonable. Swanson argues that it was reasonable to determine that this was merely a domestic disturbance that did not require further action. Chief Wales, and even Swanson himself, however, testified that a shooting in a domestic situation was an unusual incident. Thus, the evidence was sufficient for the Board to conclude that

Swanson's inaction demonstrated incompetency and a failure to report or take appropriate action as defined in the Village's rules and regulations.

Under count II, the Board found Swanson guilty of several incidents involving comments and actions toward his fellow officers that violated the Village's rules and regulations pertaining to loyalty, *esprit de corps*, discipline, morale, and conduct unbecoming an officer.

These violations were based on the following incidents: (1) after another officer told Swanson he was upsetting residents with the 10-day notices he was serving, Swanson replied that it was Chief Wales' problem; (2) Swanson told a tow truck operator he would pay a tow truck bill from his own pocket in order to keep a patrol officer from any possible reprimand for getting the car stuck; (3) Swanson told Officer Howell to investigate an incident so it would not have to be handled by Officer Bokowski; (4) Swanson, after telling Officer Bokowski he would return some street signs, told another officer to leave the signs alone and stated he knew nothing about them; (5) while on active street duty for six days, Swanson was taking Centrax, a prescribed tranquilizer, without informing Chief Wales; and (6) after arriving at a scene where Officer Howell and a new officer had their car stuck, Swanson commented to Howell that he was training the new officer the same way Howell drives and asked Howell how many days off he thought he would get for the incident; he then falsely stated to Howell that Officer Bokowski was thrown off a task force.

Swanson argues that many of these matters are trivial, and as far as the street sign incident and his taking medication, he committed no wrongdoing. The Board responds that the incidents, taken in accumulation, demonstrate that Swanson was trying to disrupt the police department. As we will explain below, we find the evidence supports the findings of the Board.

Concerning the first incident, a patrol officer testified he stated to Swanson that the residents were going to be angry about the 10-day notice tickets he had written. Swanson responded, "Yeah, but I will show Wales." The officer took this comment as a display of the problems between Swanson and Wales. Another officer testified that Swanson said, "That is Wales' problem." This officer reported the comment to Chief Wales because he felt Swanson was writing the tickets in an effort to irritate the residents and place Chief Wales in a "trick bag." Swanson did not recall the incident. We find the officers' testimony provides a sufficient basis for the Board to conclude that this was not just a trivial matter, but proof that Swanson was causing disruption.

Testimony of the second incident showed that a new patrol officer on probationary status had his car stuck when Swanson arrived at the scene. The officer stated to Swanson he was concerned that, if the tow bill was too high, he would lose his job. Swanson responded that, before he would let that happen, he would pay the bill himself. A tow truck operator testified Swanson told him he would pay the bill to keep the patrol officer from being reprimanded. Swanson testified he never offered to pay the bill and merely made a statement to show his support to the officer. We find the Board was in the best position to judge these conflicting facts. The tow truck operator's testimony provides a sufficient basis for the Board to conclude that Swanson's conduct was disloyal to the department and set a poor example to a fellow officer.

The third incident concerns a request made by Swanson to Officer Howell to investigate a blow gun dart incident. Howell testified Swanson asked him to investigate the incident instead of turning it over to Sergeant Bokowski. Howell stated he was surprised by this request because he was not an investigator but Bokowski was. Swanson testified he was merely apprising a fellow officer of a possibly dangerous situation. Again, we find the Board was in the best position to decide whether Swanson acted improperly.

The fourth incident involves a dispute between Sergeant Bokowski and Swanson. Bokowski testified he asked Swanson to return some signs that had been turned into the station, and Swanson agreed to do so. Later, Bokowski learned the signs were not being returned. When he inquired why, he was told by another officer that Swanson told that officer not to touch the signs because a property report had not been filed. Swanson testified that a report had to be filed for all property coming into the station. Swanson's argument that this incident does not involve wrongful conduct is well taken. There is little evidence that this incident was anything more than a misunderstanding over proper procedure, and it appears Swanson was the one who followed proper procedure.

The fifth incident charges Swanson took a tranquilizer while on duty for approximately one week. Chief Wales testified normal procedure dictated that an officer should not be working under the influence of a tranquilizer. He stated Swanson should have told him he was taking the drug, though there was no specific written policy requiring this. Swanson stated he took the tranquilizer after working hours only; he was not under the influence of the drug during duty. He took the drug for headaches, which he stated resulted from the job stress he felt due to harassment from Chief Wales. He did not tell

Chief Wales about the drug because he did not want him to know his mind games were working.

The Board found this act violated the rule proscribing conduct unbecoming an officer, which included any act or conduct not specifically mentioned that brought the department or individual disrepute. There existed no stated policy or rule in the department pertaining to an officer taking prescribed medication. Moreover, there is no evidence that the prescribed medication taken by Swanson did or could adversely affect him in the performance of his duties. In the absence of such policy or rule to guide an officer in this regard, we find it was against the manifest weight of the evidence for the Board, in this instance, to find that Swanson's taking tranquilizers without the knowledge of the police department brought him disrepute.

The final incident concerns a conversation between Swanson and Officer Howell. After finding Howell and a new officer with their car stuck, Swanson told Howell he was teaching the new officer to drive the way Howell drove. Howell took the comment as offensive; Swanson stated he was kidding. Swanson also asked Howell how many days off he thought he would get for the incident. Howell was offended by the comment. He said it made no sense because no one was suspended for getting a car stuck. Swanson said he was joking; he and the other officers often joked this way. Finally, Howell said Swanson asked why no one from the department had been assigned to a regional task force and then falsely stated that Sergeant Bokowski had been thrown off the task force. Swanson said he was joking, and Howell was also joking about Bokowski, stating, "Well, we sent Bokowski down there." Howell interpreted Swanson's comments in front of a new officer as an attempt at dissension.

This is another example where the Board was in the best position to decide whom and what to believe from the conflicting evidence. Though we find some merit to Swanson's argument that this incident is trivial, we do not discount it completely since it shows another example of a fellow officer who believed Swanson was causing dissension among the force.

We conclude that the Board's decision on count II was not against the manifest weight of the evidence. Though discounting the Board's finding that Swanson's taking tranquilizers brought him disrepute, we find the evidence, taken in its entirety, is, nevertheless, sufficient to find that Swanson's conduct was perceived as disruptive and divisive by his fellow officers and thus violated the rules and regulations of the Village.

Swanson also challenges the findings of count III, which reflected

the findings of a clinical psychologist. The Board concluded from these findings that Swanson was incompetent to be a police officer.

Dr. David Simmons, a clinical psychologist specializing in people with emotional problems, met with Swanson for approximately 3½ hours. For approximately two hours, Swanson took tests designed to evaluate intelligence and personality. During the clinical interview, Swanson told Dr. Simmons he had been on disability for three months due to a neck problem and headaches. He felt Chief Wales was against him, and he lost sleep worrying about his job. As a result of the clinical interview and Swanson's tests, the psychologist found the following: (1) Swanson was overly aggressive with problems with impulse control and episodic acting out; (2) he has a low tolerance for frustration, and he may become irritable or angry; (3) he has little patience and tends not to accept responsibility for his difficulties, preferring instead to blame others; (4) he is likely to manipulate others to his own ends; (5) he attempts to control other people through intimidation; (6) he has a very high level of stress and is not coping well with stress at the present time. The psychologist concluded that Swanson should not be placed in a situation where he could cause harm to himself or others.

 Swanson attacks the findings of the expert by attempting to show the tests were not sound and the psychologist's conclusions unwarranted. Swanson did not, however, put on his own expert to rebut the Village's expert. The reliability of the psychologist's evaluation presents a question of fact for the Board. We find the evidence sufficient to support the Board's findings.

 Having determined that the evidence was sufficient to support the Board's findings in all three counts, the next question is whether the findings provide sufficient cause for the Board's decision to terminate Swanson's employment. "Cause" is defined as some substantial shortcoming, recognized by law and sound public opinion as a good cause for termination, which renders the employee's continued employment in some way detrimental to the discipline and efficiency of the service. (*Walsh*, 96 Ill. 2d at 105; *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360.) An administrative review's determination of cause demands the respect of the court and is only to be overturned if it is arbitrary and unreasonable or unrelated to the requirements of service. (*Walsh*, 96 Ill. 2d at 105.) The question is not whether the court would decide upon a more lenient sanction than discharge were it to make the initial determination. The question is whether the Board acted arbitrarily or unreasonably. *Sutton v. Civil Service Comm'n* (1982), 91 Ill. 2d 404, 411.

■■■ Though Swanson attacks each count as insufficient to terminate his employment, we find it unnecessary to determine whether one count alone would have been sufficient since all counts have been proved by the evidence. We find the Board's decision to terminate Swanson's employment is not arbitrary or unreasonable. A summary of the findings against Swanson shows an officer who acted below professional standards in handling a shooting incident, who was disruptive and caused dissension among fellow officers, who was admittedly under a great deal of stress over his relationship with his commanding officer, so much so that he suffered debilitating headaches and took tranquilizers, and who, according to a psychologist, should not be placed in a position where he might endanger his own life or someone else's life. Taken as a whole, these findings provide a sufficient basis to terminate Swanson's employment.

Swanson argues that his psychological evaluation should not be a basis for dismissal. He contends *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, supports this position. In *Walsh,* a police officer, while on disability leave for psychological problems, committed the acts which resulted in his discharge. (96 Ill. 2d at 107.) The appellate court reversed the order of discharge, stating that the misconduct was a manifestation of the conduct for which he was placed on disability. (96 Ill. 2d at 107.) The supreme court held that because the evidence pertaining to the officer's psychological problems was so vague and because the Board's decision to dismiss for cause may jeopardize the officer's pension, the cause would be remanded for a more thorough examination of the officer's psychological problems. (96 Ill. 2d at 108.) Furthermore, the court held if it was determined the officer's misconduct was related to his psychological problems, the sanction against him should be other than discharge for cause. 96 Ill. 2d at 108.

Swanson contends *Walsh* stands for the proposition that an officer cannot be discharged for cause based on a psychological disability. This is not what *Walsh* held. *Walsh* held that where an officer's misconduct, which formed the basis for discharge for cause, is a manifestation of the psychological problems for which he had been placed on a medical disability leave, then that officer should not be discharged for cause. Here, Swanson was not placed on disability for psychological problems, and he does not allege on appeal that the other misconduct charges were a manifestation of his psychological problems. *Walsh* does not address the different question in this case, whether a psychological disability in and of itself may be considered as a basis for discharge.

In *Simpson v. Illinois Civil Service Comm'n* (1980), 86 Ill. App. 3d 733, 736, the court held that a physical disability that was not the fault of the employee could provide a legitimate basis for termination. Noting that no Illinois court had addressed the issue, *Simpson* quoted a Vermont case which held:

> "The more precise question, therefore, is whether 'cause' may be interpreted to include physical disability. We do not hesitate to answer this question in the affirmative. The discharge of public employees physically or mentally unable to perform the duties of their offices has been upheld in numerous decisions." (*Gadue v. Village of Essex Junction* (1975), 133 Vt. 282, 283, 336 A.2d 182, 183.)

In *Simpson*, the court held that a woman who had an admitted inability to return to work for an indefinite period of time constituted a sufficient basis for termination. (*Simpson*, 86 Ill. App. 3d at 736.) We find, under *Simpson*, the Board properly considered Swanson's psychological problems. Swanson admitted he had filed for disability pension, and he did not know when he would be able to return to work. Swanson argues that it would not be fair to allow termination on this basis because this resulted in the termination of his pension. Swanson did not raise below an issue in regard to his pension, and there is no basis in the record to determine whether Swanson lost his pension. Thus, we do not address Swanson's objection in this appeal.

Next, Swanson argues the Board violated his rights by not allowing him to present evidence in mitigation. Swanson has failed to cite any authority in support of this contention. Thus, it is waived. *In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684, 688-89.

Moreover, there is no merit to the contention. The Board did not prevent Swanson from presenting mitigating evidence; rather, it denied Swanson's motion for a continuance. The record shows that when the Board stated that it would consider matters of mitigation and aggravation, Swanson did not object. Shortly thereafter, when it came time for his evidence, however, Swanson asked for a continuance, stating the proceedings had been going for 12 hours, and he and his client were exhausted. The Village objected and stated it had informed Swanson they would be proceeding on mitigation and aggravation. Administrative agencies are vested with broad discretion to grant or deny continuances. (*Lindeen v. Illinois State Police Merit Board* (1962), 25 Ill. 2d 349, 351.) Swanson was informed to be ready to present evidence in mitigation, and the record does not reflect that there would have been undue hardship in requiring Swanson to proceed. Thus, there was no abuse of discretion.

 Swanson's final contention alleges the trial court erred in dismissing with prejudice count II of his complaint alleging a violation of the Open Meetings Act (Act) (Ill. Rev. Stat. 1987, ch. 102, par. 41 *et seq.*). Swanson asked the court to declare the Board's acts null and void as a result of a violation of the Act. We find the trial court correctly ruled count II failed to allege a cause of action. Swanson contends the Board violated the Act because it made various disclosures to the public concerning information made in closed session. Swanson fails to include one specific example of such a disclosure in his complaint. At any rate, there is no provision in the Open Meetings Act that applies to the action about which Swanson complains. The Open Meetings Act is aimed at guaranteeing public access to meetings of governmental bodies. (Ill. Rev. Stat. 1987, ch. 102, par. 41.) It also allows governmental bodies to meet in closed session in certain situations. (Ill. Rev. Stat. 1987, ch. 102, par. 42a.) There is nothing in the Act that provides a cause of action against a public body for disclosing information from a closed meeting.

 The court did not err in dismissing this count with prejudice. A trial court has discretion to allow the amendment of pleadings or to terminate the litigation. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615(d).) The trial court's decision will not be reversed absent an abuse of discretion. (*Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740, 749.) A complaint is properly dismissed with prejudice only where the plaintiff is entitled to no relief on the facts alleged. (*Westgate Terrace Community Associates, Inc. v. Burger King Corp.* (1978), 66 Ill. App. 3d 721, 729.) Since Swanson clearly has no cause of action under the Open Meetings Act, the trial court properly dismissed this count with prejudice. We also note that Swanson did not contest the judge's order or move to file an amended pleading; nor is there any record that Swanson responded to the Board's motion to dismiss. Thus, Swanson made no effort to attempt to plead a proper cause of action.

For the foregoing reasons, the decision of the circuit court is affirmed.

Affirmed.

REINHARD and INGLIS, JJ., concur.