THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* EDWARD L. BYRNES, Defendant-Appellee.

(No. 74-429;

Second District (2nd Division)—December 23, 1975.

Gerry Dondanville, State's Attorney, of Geneva (Juul H. Thompson, Assistant State's Attorney, of counsel), for the People.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellee.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The State appeals questioning the trial court's authority to dismiss, on its own motion, a Class 1 felony indictment against the defendant, who, found mentally incompetent to stand trial, had spent five years in State mental institutions.

On June 2, 1969, the defendant (mentally retarded in the moderate to severe range) was indicted on one count of indecent liberties with a child, a Class 1 felony, and one count of contributing to the sexual delinquency of a child, a misdemeanor. In July of that year, a jury found him mentally incompetent to stand trial and, pursuant to section 104—3(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, ch. 38, § 104—3(a)) defendant was committed to the Department

of Mental Health until such time as he should recover from that condition.

The case first came before this court after the circuit court had denied defendant's petition for a writ of habeas corpus. This denial was reversed on appeal in light of *Jackson v. Indiana*, 406 U.S. 715, 32 L.Ed.2d 435, 92 S.Ct. 1845 (1972), in that the defendant's continuing commitment constituted a violation of both equal protection and due process. This court's opinion (*People v. Byrnes*, 7 Ill.App.3d 735, 738 (1972)) suggested that the then soon-to-be effective Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, § 1005—2—2(b)) provides the State with an appropriate procedure in which an accused person, found unfit to stand trial, could be committed only after the civil competency hearing afforded other persons, avoiding the equal protection and due process problem inherent in the former section 104—3(a).

On remand, habeas corpus relief was again denied and no further proceedings regarding defendant's commitment appear in the record until April of 1974 when, on the State's motion, a civil commitment hearing was held pursuant to section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, § 1005—2—2). It was the State's position that that hearing was limited to questions of civil commitment inasmuch as the question of defendant's competence to stand trial had been decided by the jury in 1969. The trial court, however, felt it was proper to additionally entertain the question of defendant's present fitness for trial.[1]

At the hearing in April of 1974, four witnesses (two court-appointed psychiatrists and two social workers) testified. Their unanimous opinion was that the defendant did not need hospitalization, but, if released, would require some sort of supervision. Both psychiatrists testified that the defendant's condition of mental retardation was chronic and would never improve; both social workers testified that defendant was not dangerous to himself or others.

The trial judge found that the defendant was no longer in need of hospitalization. He made no ruling on defendant's present fitness to stand trial, but ordered the indictments against him dismissed. The misdemeanor charge was dismissed under section 5—2—2(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, § 1005—2—2(c)), which provides that when a defendant has been confined in a hospital

---

[1] The new Code of Corrections substitutes a test of "fitness" to stand trial for the former test of "competence" under which defendant was committed.

for a period equal to the maximum sentence possible for the offense charged, the court shall order the charge dismissed.

The State does not appeal the dismissal of the misdemeanor but appeals the dismissal of the Class 1 felony of indecent liberties with a child. As basis for dismissal of this charge, the court found that there was no evidence of defendant's danger either to himself or to society, that the defendant had already been hospitalized for a period of five years, was a first offender, and would have been eligible for probation even if found guilty of the original charges. The court found authority to so rule in its general jurisdiction over criminal matters.

■■ Under the 1970 Illinois Constitution, article 6, section 9, circuit courts are courts of general jurisdiction. They may adjudicate any justiciable matter coming to them according to the course of common law, as well as any matter over which they are specifically given jurisdiction by statute.

■■ The authority to dismiss criminal charges prior to trial—in essence the ability to nol-pros—was not invested in the court at common law. Instead, such authority rested solely with the prosecuting officer, the Attorney General. (See *People ex rel. Elliott v. Covelli*, 415 Ill. 79, 85-88 (1953).) In Illinois, the authority to prosecute has passed by statute to the State's Attorney. (Ill. Rev. Stat. 1973, ch. 14, §§ 5(1), 5(6).) The converse power to nol-pros is implied within this power. We hold, therefore, that the trial court's general jurisdiction in matters arising under the common law did not give it authority to dismiss the criminal charge in this case. *People v. Guido*, 11 Ill.App.3d 1067, 1069 (1973).

■■ Whereas a court of general jurisdiction is presumed to have jurisdiction to render any judgment in a case arising under the common law, there is no such presumption of jurisdiction in cases arising under a specific statutory grant of authority. In the latter cases the record must reveal facts which authorize the court to act. (*People v. Nunes*, 58 Ill.App.2d 55, 60, 61 (1965).) Thus, we examine whether, under the facts of this record, the court had specific statutory authority for dismissing the Class 1 felony.

Prior to the enactment of the new Unified Code of Corrections, the only grounds upon which the court could dismiss an indictment prior to trial were enumerated in section 114—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, § 114—1(a)). (See *People v. Schick*, 101 Ill.App.2d 377, 379-380 (1968).) In the case at bar, the court based its dismissal upon the fact that defendant had been confined in a hospital for five years, had not been shown to be of danger to himself or to society, had no record of prior offenses, and would have been eligible for probation had he been convicted. Defense coun-

sel does not contend, nor do we find, that these reasons constitute any of the ten statutory grounds codified in section 114—1(a).

■■ The enactment of section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, § 1005—2—2) made available an additional statutory ground for dismissal: the court, on written motion of defendant, can dismiss a criminal charge when a defendant, found unfit for trial, has been confined in a hospital for a time equal to the maximum sentence imposable on that charge. We note that, here, no such motion was made by defense counsel. More importantly, the crime charged, indecent liberties with a child, is a Class 1 felony, and carries a maximum sentence of any term in excess of four years. (Ill. Rev. Stat. 1973, ch. 38, § 1005—8—1(b)(2).) We conclude that section 5—2—2 does not authorize the court to dismiss the charges in the case of a Class 1 felony.

Defense counsel urged, on oral argument, that in consideration of justice, the court fashion a new basis (in addition to the statutorily permitted grounds) for judicial dismissal of charges in the case of perpetually unfit defendants. Counsel argues that the trial court was persuaded that defendant was, and always would be, unfit to stand trial and that the indefinite maintenance of charges against an untriable defendant is a denial of due process of law. The record, however, contains no such finding as to fitness. The court-appointed psychiatrists agreed that the defendant's mental condition would never improve; they disagreed on the issue of his present fitness to stand trial. The record sets forth the judge's conclusion that the defendant, if brought to trial, would be eligible for probation; there is no showing that the court thought him unfit to stand trial. (See *People ex rel. Myers v. Briggs*, 46 Ill.2d 281 (1970); *People v. Lang*, 26 Ill.App.3d 648 (1975).) Therefore, we are not presented, as suggested by counsel, with the case of a defendant whose mental condition has been found to render him presently and perpetually unfit to stand trial. Moreover, we believe this area of law would more properly be resolved by the legislature than by the judiciary.

We join with the First District Appellate Court in its recently expressed hope that the Governor's Commission for Review of the Mental Health Code of Illinois will include in its study the difficulties encountered in the disposition of charges against unfit criminal defendants (*People v. Lang*, 26 Ill.App.3d 648, 659 n. 5 (1975)), especially where unfitness is found to be permanent.

■■ For the above reasons, we reverse that portion of the trial court's order dismissing the indictment for the Class 1 felony with directions to conduct a hearing to determine the defendant's present fitness to stand

trial, and, if unfit, proceed at defendant's option, in the manner set forth in *People ex rel. Myers v. Briggs,* and *People v. Lang.*

Affirmed in part; reversed in part and remanded with instructions.

RECHENMACHER, P. J., and DIXON, J., concur.