[Civ. No. 5836. Fifth Dist. Dec. 31, 1980.]

BOARD OF MEDICAL QUALITY ASSURANCE, Petitioner, v. THE SUPERIOR COURT OF FRESNO COUNTY, Respondent; CHARLES D. WILLIS, Real Party in Interest.

274

## Counsel

George Deukmejian, Attorney General, and Joel S. Primes, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

Nuttall, Berman & Magill and Timothy V. Magill for Real Party in Interest.

## Opinion

**BROWN (G. A.), P. J.**—Real party in interest, Charles D. Willis, is a medical doctor whose license to practice medicine was revoked after a full hearing by petitioner, the Division of Medical Quality, Board of Medical Quality Assurance, Department of Consumer Affairs. Real party filed a petition for administrative mandate (Code Civ. Proc., § 1094.5)[1] to review the decision of the petitioner and requested an order temporarily staying the administrative decision pending the section 1094.5 review. After a hearing the respondent court granted real party's request and stayed the order revoking real party's license. Petitioner seeks a writ of mandate directing respondent court to vacate its stay order.

Subdivision (h)(1) of section 1094.5 authorizes the court to stay the administrative revocation of a medical doctor's license "provided that such stay shall not be imposed or continued unless the court is satisfied that the public interest will not suffer and that the . . . agency is unlikely to prevail ultimately on the merits; . . ."

Before granting the stay order the respondent court stated: "I don't like the language of 1094.5 which says, 'The Court must find that there has been a prima facie showing of "that the agency is unlikely to prevail ultimately on the merits"' because I don't know how exactly to address —what 'unlikely to prevail ultimately on the merits' means. I presume that it means that there has been a prima facie showing of a possible viable defense, which if accepted by the reviewing Court, would result or would cause that reviewing Court to reach a different decision. If that is synonymous with the agency, is likely to prevail, and I believe that that must be the intent of that language, then this Court concludes that the petition—Petitioner has made a prima facie showing under

---

[1]All references are to the Code of Civil Procedure unless otherwise indicated.

1094.5 of the Code of Civil Procedure warranting a stay or revocation order . . . ."

■ Petitioner contends that respondent court erroneously interpreted the statutory phrase, "that the . . . agency is unlikely to prevail ultimately on the merits" to mean that "there has been a prima facie showing of a possible viable defense, which if accepted by the reviewing Court, would result or would cause that reviewing Court to reach a different decision," and thereby diluted the statutory requirements for issuance of a stay order. We agree.

The statutory phrase "the . . . agency is unlikely to prevail ultimately on the merits" is clear and concise; it appears that the Legislature carefully chose these words to limit and define a trial court's power to issue a stay order. The statute mandates a preliminary assessment of the merits of real party's petition and a conclusion that he is likely to obtain relief therein. In short, the statute requires more than a conclusion that a possible viable defense exists.

Because of its erroneous interpretation of the requirement of section 1094.5, subdivision (h)(1), the court issued the stay order by applying the wrong standard. In doing so the court exceeded its jurisdiction in issuing the stay order. It follows that petitioner is entitled to appropriate relief. (See *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288, 291 [109 P.2d 942, 132 A.L.R. 715]; *People* v. *Superior Court* (*Duran*) (1978) 84 Cal.App.3d 480, 484-485 [148 Cal. Rptr. 698].)

■ Real party contends that the statutory standard contained in subdivision (h)(1) of section 1094.5 denies him equal protection of the law. His contention is based upon the correct observation that Code of Civil Procedure section 1094.5 provides for two different standards; one (§ 1094.5, subd. (h)) applicable to applications for stay orders of state agencies regulating the medical profession, and the other (§ 1094.5, subd. (g)) generally applicable to applications for stay orders of other state agencies. Subdivision (g) of section 1094.5 requires only that before the issuance of a stay order "the court [be] satisfied that it is [not] against the public interest."

In approaching this question it is significant that the stay order provisions of section 1094.5 are operative only *after* the administrative agency has conducted a full due process hearing and made an administrative determination that the physician is no longer qualified to possess

a license to practice. Moreover, the statute only affects the doctor's right to practice temporarily, that is, the time period between the issuance of the stay order by the trial court and the finality of the judgment in the mandamus proceeding in the trial court.

Our Supreme Court has previously considered the proper standard of judicial review for actions challenging the constitutionality of classifications involving the medical profession. ■ "The conventional 'rational relationship' test is traditionally applied in cases involving occupational licensing, including those concerning the practice of the healing arts." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 17 [112 Cal.Rptr. 786, 520 P.2d 10].) The *D'Amico* court explicitly rejected claims, similar to those of real party in interest here, that the "strict scrutiny" test of *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal. 3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351] applies to legislative classifications affecting the "right to pursue employment," absent a showing that the classification scheme was suspect in a constitutional sense, i.e., that distinctions were based on sex, alienage or national origin. (*D'Amico* v. *Board of Medical Examiners, supra*, 11 Cal.3d 1, 17-18.) As was observed in *Hardy* v. *Stumpf* (1978) 21 Cal. 3d 1, 8 [145 Cal.Rptr. 176, 576 P.2d 1342]: "Nor does the classification in the present case impinge upon a fundamental right. In *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], we held the right to pursue a lawful occupation is fundamental only if the employment sought is a common occupation within the community. An individual does not possess a fundamental right to pursue an occupation wherein 'technical complexity and intimate relationship to the public interest and welfare counsel...deference to legislative judgment.' (*Id.*, at p. 18.)" (Fn. omitted.)

■ The burden of demonstrating the invalidity of a classification under this standard rests upon the party challenging it. (*D'Amico* v. *Board of Medical Examiners, supra*, 11 Cal.3d 1, 17; *Blumenthal* v. *Board of Medical Examiners* (1962) 57 Cal.2d 228, 233 [18 Cal.Rptr. 501, 368 P.2d 101].) Real party contends that the extra requirement of Code of Civil Procedure section 1094.5, subdivision (h)(1) is "arbitrary and unreasonable and subject[s] similarly situated persons to disparate treatment with regards to their most fundamental right to practice their occupation or profession."

■ The law is clear that "[t]here is no constitutional requirement of uniform treatment. [Citations.] Legislative classification is permissible

when made for a lawful state purpose and when the classification bears a rational relationship to that purpose." (*Estate of Horman* (1971) 5 Cal.3d 62, 75 [95 Cal.Rptr. 433, 485 P.2d 785].) Moreover, "'Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary.... [Citations.] *A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.*'" (*Ibid.*, italics added; accord, *Ohio Bureau of Employment Services* v. *Hodory* (1977) 431 U.S. 471, 489-490 [52 L.Ed.2d 513, 527, 97 S.Ct. 1898].)

The courts have had opportunity to describe the "unique position" of influence of those who are licensed to practice the healing arts. (*Thorpe* v. *Board of Examiners* (1980) 104 Cal.App.3d 111, 116 [163 Cal.Rptr. 382].) The profession is one of "technical complexity" which, by its very nature, has an "intimate relationship to the public interest and welfare." (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d at p. 18.) "There is no profession where the patient passes so completely within the power and control of the operator as does the medical patient." (*Fuller* v. *Board of Medical Examiners* (1936) 14 Cal.App.2d 734, 741-742 [59 P.2d 171].) Because the unlearned patient "has an abject dependence upon and trust in his physician," the courts have placed heavy burdens of disclosure upon the medical profession. (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 242 [104 Cal.Rptr. 505, 502 P.2d 1].)

Thus, the legislative classification establishing a stricter standard in the case of a physician for determining whether an administrative revocation of the physician's license should be temporarily stayed bears a rational relationship to the unusually influential and sensitive relationship between the physician and the public and his patients and is not unreasonable or arbitrary. Accordingly, the standard does not deny real party equal protection of the laws.

Real party argues that subdivision (h)(1) of section 1094.5 constitutes "an unconstitutional grant of judicial power to an administrative agency" and an unconstitutional "invasion of the judiciary's power," thus violating the separation of powers doctrine.

Clearly, the grant of the power to stay the operation of the administrative order is to the judiciary and not to the administrative agency; hence the first prong of the argument is a non sequitur.

Real party cites no authority, and our independent research has revealed none for the rather startling proposition that the Legislature does not have the constitutional authority to establish the appropriate standard by which the courts may issue an order staying the operation of an administrative order. Real party has utterly failed to establish why the Legislature does not have that authority in this case in the face of the commonly accepted proposition that the Legislature does have such authority in literally hundreds of analogous situations. Accordingly, we see no merit in this contention.

Petitioner contends that respondent court abused its discretion in concluding that the issuance of a stay order would be in the public interest. We decline to decide this issue because it may be mooted by the ruling of respondent court after the hearing which we will direct.

Real party seeks a directive from this court on the propriety of admitting into evidence in the hearing on the stay order the declarations offered by the Attorney General. The trial judge rejected real party's contentions during the course of the first hearing. Because real party appears in this court as a respondent to a writ petition, and not as a petitioner himself, and because the issue has nothing to do with the propriety of the alternative writ or with subdivision (h)(1), section 1094.5, the evidentiary issue is not properly before the court.

The balance of real party's contentions are either frivolous or not appropriately addressed at this time.

Let a peremptory writ of mandate issue directing the Superior Court of Fresno County to conduct a hearing to determine if the stay order issued on June 18, 1980, in action No. 256506-7 should be continued pursuant to Code of Civil Procedure section 1094.5, subdivision (h), as herein construed. Insofar as it seeks relief not granted above, the petition for writ of mandate is denied.

Hopper, J., and Andreen, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied March 18, 1981.