ARNOLD BICKHAM, Plaintiff-Appellee and Cross-Appellant, v. STEPHEN F. SELCKE, Director of the Department of Professional Regulation, *et al.*, Defendants-Appellants and Cross-Appellees.

First District (3rd Division)   No. 1—89—3198

Opinion filed June 28, 1991.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellants.

Stackler & Augustine, of Chicago (Algis K. Augustine and Jeffrey B. Levins, of counsel), for appellee.

JUDGE GREIMAN delivered the opinion of the court:

The defendants, Stephen F. Selcke, the Director of the Illinois Department of Professional Regulation, and the Illinois Department of Professional Regulation (the Department), initiated this interlocutory appeal following an order by the circuit court of Cook County remanding this matter for a new administrative hearing based on an alleged procedural error, *i.e.,* the hearing officer's denial of a continuance requested by an attorney for the plaintiff, Dr. Arnold Bickham, on March 9, 1988.

The Department contends that the plaintiff has been afforded due process, the hearing officer did not abuse his discretion and the decision of the Department should be upheld.

For the reasons set forth below, we agree with the Department and accordingly reverse the circuit court's order.

On cross-appeal, the plaintiff asserts that the Department's decision to revoke his medical license should not remain in effect during the pendency of a rehearing. We need not address this issue in light of our decision that a new administrative hearing is not required.

On the morning of December 31, 1986, the plaintiff performed an abortion on Sylvia Moore, who was an 18-year-old woman in her second trimester of pregnancy. Later that same day Ms. Moore was taken by her mother to the emergency room at Rush-Presbyterian-St. Luke's Medical Center (Rush). Surgery was performed at Rush but Ms. Moore did not survive.

On February 17, 1987, the Department filed a formal complaint against the plaintiff based on his negligent performance of the abortion on Ms. Moore. The Department's complaint alleged that plaintiff's performance during the abortion procedure constituted malpractice, the operation was the direct and proximate cause of Ms. Moore's death, and the plaintiff's acts were grounds for revocation or suspension under the Medical Practice Act (the Act) (Ill. Rev. Stat. 1985, ch. 111, par. 4401 *et seq.*). Accordingly, the Department

requested that the plaintiff's license as a physician and surgeon be suspended, revoked or that he be otherwise disciplined.

The formal evidentiary hearings on the Department's complaint commenced on February 9, 1988, and concluded four months later after 12 days of hearings.

On March 9, 1988, the fifth day of hearings, Alan Rhine, an attorney appearing on behalf of the plaintiff, requested a continuance due to the illness of another attorney, Algis Augustine. The hearing officer, Thomas Chiola, observed that during the course of this case, four attorneys had appeared on behalf of the plaintiff. The four attorneys were Algis Augustine, Ronald Stackler (Mr. Augustine's partner), Kathryn Ingram (a new member of the Stackler & Augustine law firm), and Alan Rhine (an independent attorney who occasionally worked with Mr. Augustine). Mr. Rhine asserted that he was not familiar with the plaintiff's case and that he had other pending matters requiring his attention. The hearing officer reminded Mr. Rhine that he had been involved in the pretrial proceedings in this case. Mr. Rhine further contended that Mr. Stackler could not attend this hearing because he was out of the State. However, later information revealed that Mr. Stackler was not out of town.

The hearing officer denied Mr. Rhine's motion for a continuance, reasoning that the plaintiff was represented by two attorneys (Mr. Rhine and Ms. Ingram) and that members of the panel (three members of the Medical Disciplinary Board and the hearing officer) were prepared to ask questions of the scheduled witnesses to provide a full record to the Medical Disciplinary Board (Board). After the hearing officer's ruling, Mr. Rhine left the proceedings but Ms. Ingram remained.

Two witnesses, both of whom were Ms. Moore's attending physicians at Rush, testified at the March 9 hearing. Dr. Patricia Boatwright was the obstetrics and gynecology surgeon; Dr. Bruce Spiess was the anesthesiologist. Following the direct examination of each witness, Ms. Ingram expressly reserved the right to cross-examine them when Mr. Augustine could be present.

In response to this reservation of rights following the direct examination of Dr. Boatwright, the hearing officer stated "now is the time if you have questions." Although such response was probably improper, at the next hearing (April 5), the hearing officer recognized the inappropriateness of his statement and advised plaintiff that he had not precluded the two witnesses from being recalled.

After Ms. Ingram specifically reserved the right to cross-examine each witness, all three Board members and the hearing officer questioned the two witnesses.

On April 5, 1988, the next scheduled hearing day, Mr. Augustine argued his motion for a mishearing based on the hearing officer's denial of a continuance at the March 9 hearing. The hearing officer denied the motion, finding that the plaintiff had not shown any actual prejudice, any additional testimony could be taken during the plaintiff's case in chief which had not yet been presented, and the March 9 witnesses were not precluded from being recalled.

Seven hearings were held following the March 9 proceeding. The subsequent hearings took place on April 5, April 6, April 7, May 4, May 5, May 6, and June 1.

During those months, the plaintiff never requested that the Department make the March 9 witnesses available for cross-examination, never asked that any portions of the record of March 9 be stricken, and never recalled the two witnesses who testified on March 9. Since the plaintiff made no further requests with respect to those witnesses, no further rulings were made by the hearing officer.

However, during his case in chief, the plaintiff called several other health care providers from Rush, including doctors and nurses who provided medical services to Ms. Moore. Before these witnesses from Rush testified, the hearing officer ruled that plaintiff's counsel could treat them as "adverse" witnesses and thus cross-examine during direct examination. Nothing in the record reveals that the hearing officer would have treated the March 9 witnesses any differently.

On July 25, 1988, the hearing officer issued his report to the Medical Disciplinary Board and recommended that sanctions be imposed upon plaintiff. Thereafter, the Board adopted the hearing officer's findings of fact and conclusions of law and made its recommendation to revoke the plaintiff's license. On October 31, 1988, the Director of the Department, Stephen F. Selcke, adopted the Board's conclusions and revoked the plaintiff's license for a minimum of five years.

The plaintiff filed a complaint in the circuit court for administrative review of the Director's decision and alleged numerous errors in the administrative proceedings.

The circuit court granted the plaintiff a new administrative hearing on the grounds that the hearing officer's refusal to grant a continuance on March 9 was an abuse of discretion. The circuit

court found that the plaintiff's guaranteed right to be assisted by counsel was denied on March 9; that the issue is one of an attorney's preparedness, not the mere presence of other attorneys; that the fundamental right of a fair hearing was at stake and outweighed concerns for speed, efficiency and inconvenience; and a single day's delay would not cause harm to the public interest.

While the thoughtful decision of the court below strikes many responsive chords, an examination of the entire record does not justify remandment for a rehearing.

The precedential value of this decision must be limited to the narrow circumstances of this case where plaintiff, after properly reserving the right of cross-examination, failed to ask for an opportunity to cross-examine the witnesses at any of the seven subsequent hearings.

In support of his position, the plaintiff contends that the denial of his motion for continuance was an abuse of discretion, citing *Ullmen v. Department of Registration & Education* (1978), 67 Ill. App. 3d 519, 385 N.E.2d 58. In *Ullmen*, this court found that an administrative agency's refusal to grant a continuance constituted an abuse of discretion and warranted a new administrative hearing.

The *Ullmen* case is distinguishable from the present case. *Ullmen* involved proceedings to suspend plaintiff's real estate broker's license. The plaintiff appeared without counsel at the first hearing day (June 10, 1976) and requested a continuance due to her attorney's absence by reason of his wife's sudden and serious illness. Denying the plaintiff's request for a continuance, the Real Estate Examining Committee advised the plaintiff that she could purchase a transcript of the adverse witnesses' testimony and could request that the Department subpoena these witnesses again later in the proceedings, but at her expense and only as defense witnesses. The plaintiff remained at the hearing but asked no questions and made no statements. When the hearings reconvened on July 30, the plaintiff's objections to the June 10 hearing were overruled.

In *Ullmen*, plaintiff lacked any legal representation. Moreover, the plaintiff suffered prejudice because she was required to call the witnesses who testified at the disputed hearing as her own witnesses at the reconvened hearing, instead of pursuing their cross-examination through her attorney.

Unlike the plaintiff in *Ullmen*, the plaintiff in the case at bar had legal representation at the disputed hearing. Although Mr. Rhine chose to leave the hearing, Ms. Ingram remained and ex-

pressly reserved the right to cross-examine the two witnesses at a later time.

Seven more hearings were held over the span of nearly three months (March 9 through June 1) which gave the plaintiff ample opportunity to assert this right, which was specifically reserved on the record. The plaintiff abandoned his opportunity and right to cross-examine.

Unlike the committee in *Ullmen*, the hearing officer in the present case did not instruct the plaintiff that he would have to request that the witnesses be subpoenaed at his expense and as defense witnesses. The hearing officer never ruled on whether or not the plaintiff would be required to call the March 9 witnesses as his own witnesses because the plaintiff never attempted to recall these witnesses.

■ It is well established that an administrative agency possesses broad discretion in deciding whether or not to grant a motion for a continuance. (*Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 227 N.E.2d 754.) Such discretion, however, "must be exercised judiciously, and not arbitrarily" so as to satisfy the ends of justice. *Brown*, 37 Ill. 2d at 454, 227 N.E.2d at 756-57.

■ "Administrative as well as judicial proceedings are governed by the fundamental principles and requirements of due process of law." (*Brown*, 37 Ill. 2d at 454, 227 N.E.2d at 756.) Cross-examination is indisputably a fundamental right and an integral part of due process. Accordingly, "[b]asic notions of fair play require that parties have an opportunity to cross-examine, explain or refute facts." (*Six-Brothers King Drive Supermarket, Inc. v. Department of Revenue* (1989), 192 Ill. App. 3d 976, 983, 549 N.E. 2d 586, 590.) In *Six-Brothers*, this court held that a denial of a motion for continuance warranted a new hearing because the "unique circumstances" of the case prevented the plaintiff "from any type of representation at all, and the hearing became an *ex parte* proceeding." *Six-Brothers*, 192 Ill. App. 3d at 984, 549 N.E.2d at 590.

■ We find that under the facts of this case, the hearing officer did not abuse his discretion in denying the plaintiff's motion for a continuance.

■ "There is no absolute right to a continuance in an administrative proceeding, the agency possessing broad discretion in determining whether to allow a delay in the proceedings." (*Wegmann v. Department of Registration & Education* (1978), 61 Ill. App. 3d 352, 357, 377 N.E.2d 1297.) In determining whether or not there has been an abuse of discretion, the courts have considered whether

or not any prejudice to the moving party resulted from the administrative agency's decision. (*Rasky v. Department of Registration & Education* (1980), 87 Ill. App. 3d 580, 410 N.E.2d 69, 76; see also *Giampa v. Illinois Civil Service Comm'n* (1980), 89 Ill. App. 3d 606, 411 N.E.2d 1110 (the hearing officer did not err in allowing the filing of a second charge against the plaintiff where the plaintiff did not demonstrate that he suffered any prejudice from the amendment); *Midwest Home Savings & Loan Association v. Ridgewood, Inc.* (1984), 123 Ill. App. 3d 1001, 463 N.E.2d 909.) In *Midwest Home Savings & Loan Association*, while dismissing the appeal on procedural grounds, the court noted that "the denial or refusal of a continuance is not a ground for reversal where the party complaining is not prejudiced thereby. [Citation.] Defendant does not allege any prejudice resulting to it from the denial of its motion; therefore, we conclude that the denial of defendant's motion for a continuance was not error." *Midwest Home Savings & Loan Association*, 123 Ill. App. 3d at 1005.

Similarly, where nothing in the record establishes prejudice to the movant, the hearing board's decision will not be reversed even if it was error not to allow a continuance. (*Martich v. Ellis* (1981), 100 Ill. App. 3d 1098, 427 N.E.2d 876.) In *Martich*, the plaintiff was a patrolman suspended for 30 days by the Board of Fire and Police Commissioners of the Village of Matteson. In affirming the plaintiff's suspension, the court held that the board acted within its discretion in denying the plaintiff's request for a continuance to permit a witness to go home and obtain his original handwritten statement where a verbatim account of the handwritten statement had already been provided. The *Martich* court continued by finding that even assuming it was error to deny a continuance, nothing in the record established prejudice to the plaintiff.

To demonstrate prejudice in the present case, plaintiff argues that (1) he was deprived of the chance to minimize the damage the March 9 witnesses would have on his defense against the charges levied by the Department; (2) the inability to cross-examine the witnesses when they gave their direct testimony effectively deprived plaintiff of his right to legal representation; (3) he was denied the opportunity to object to improper questions and make appropriate statements at the time of direct examination; and (4) Drs. Boatwright and Spiess were the two most critical witnesses for the Department.

■ We find plaintiff's arguments unpersuasive for several reasons. Plaintiff's assertions seem to overlook the fundamental format

which necessarily defines an administrative proceeding. The primary purpose of an evidentiary hearing is to compile a record for examination by the ultimate decisionmaker. In turn, the record, together with the hearing officer's findings and recommendations, is reviewed by the Board. Thereafter, the record, together with the Board's findings and recommendations, is examined by the Department, whose Director then makes the decision. Accordingly, this three-step process indicates that the final decisionmaker, *i.e.*, the Director of the Department, is not concerned with nor dependent on the sequence of the testimony or evidence presented at the initial hearing stage.

■■ ■ Furthermore, the distinction between administrative and judicial proceedings is well recognized. An "administrative procedure is simpler, less formal and less technical than judicial procedure." (*Desai v. Metropolitan Sanitary District of Greater Chicago* (1984), 125 Ill. App. 3d 1031, 1033, 466 N.E.2d 1045.) "Due process requirements differ in judicial and administrative hearings." (*Sapstein Brothers Pharmacy, Inc. v. Department of Registration & Education* (1988), 177 Ill. App. 3d 349, 352, 532 N.E.2d 340.) " '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 51, 416 N.E.2d 1082, quoting *Mathews v. Eldridge* (1976), 424 U.S. 319, 334, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 902.

■ In light of the multiple-level review process and the less structured format of an administrative proceeding, plaintiff had ample opportunity to present his case fully on the record during the seven subsequent hearings held after March 9. Plaintiff had the option of recalling the March 9 witnesses to elicit any further information which plaintiff deemed helpful or necessary to his defense and of filing motions to strike any alleged improper questions or answers brought out during direct examination.

Moreover, plaintiff now admits in his brief that he "was not hoping to adduce proof beyond the scope of their direct examination, nor did he wish to employ their testimony to prove anything." Certainly, plaintiff's characterization of Drs. Boatwright and Spiess as the two most critical witnesses brings into question plaintiff's lack of action in asserting his reserved right to cross-examine them.

We conclude the plaintiff has not demonstrated sufficient prejudice to establish that the hearing officer abused his discretion in denying plaintiff's motion for a continuance.

■ The diligence of the movant is another factor considered by the courts in determining whether or not it was an abuse of discretion to deny a motion for continuance. *Bethany Reformed Church v. Hager* (1979), 68 Ill. App. 3d 509, 511, 386 N.E.2d 514, 516 ("a critical consideration in deciding whether a continuance should be granted is whether the moving party has proceeded with diligence").

The court in *Giampa v. Illinois Civil Service Comm'n* (1980), 89 Ill. App. 3d 606, 411 N.E.2d 1110, found no abuse of discretion in the denial of the plaintiff's request for a continuance and reasoned that the plaintiff's lack of due diligence was a determining factor in its conclusion. (*Giampa*, 89 Ill. App. 3d at 611.) The plaintiff in *Giampa* was discharged from his job with the Illinois Commission on Delinquency Prevention based on the charge that he had aided a minor in her taking of alcoholic substances. At the end of the hearing, the plaintiff sought a continuance to enable him to subpoena the complainant-victim as a witness. In affirming the hearing officer's denial of the plaintiff's request for a continuance, the court found that the plaintiff's counsel had timely notice of the hearing, he never inquired whether the assistant Attorney General intended to have the victim testify, and he made no attempt to secure the presence of the alleged victim.

Similarly, the plaintiff in the instant case clearly cannot claim a lack of notice of the hearings or a lack of knowledge that Drs. Boatwright and Spiess testified. Also like the plaintiff in *Giampa*, the present plaintiff failed to make any attempt to secure the presence of the witnesses subject to the dispute.

The principle underlying the due diligence requirement suggests that a party should actively pursue his rights. Here, plaintiff had more than sufficient time to assert his right to cross-examine the March 9 witnesses.

Upon examination of the whole record, we cannot say that the action of the hearing officer denied plaintiff his right of cross-examination or denied him the basic elements of fairness that must always be present in proceedings of this nature.

On cross-appeal, plaintiff contests the order entered by the circuit court on November 2, 1989, which provides that although a new hearing was required, the Department's decision to revoke plaintiff's medical license was not reversed. Plaintiff asserts that a remand without a reversal violates his constitutional right to due process and if section 41 of the Medical Practice Act allows plain-

tiff's license to remain revoked during the rehearing process, then section 41 should be declared unconstitutional.

Section 41 provides as follows:

"During the pendency and hearing of any and all judicial proceedings incident to such disciplinary action the sanctions imposed upon the accused by the Department shall remain in full force and effect." Ill. Rev. Stat. 1989, ch. 111, par. 4400—41.

Since we have found that a new hearing is not required in this case, we need not address this issue. However, we note that the constitutionality of section 41 has recently been upheld again in *Pundy v. Department of Professional Regulation* (1991), 211 Ill. App. 3d 475.

Accordingly, we reverse the order of the circuit court and remand the cause to the circuit court for resolution of the remaining grounds for administrative review which were not considered by the court below.

Reversed and remanded with directions.

CERDA, P.J., and WHITE, J., concur.