(No. 72440.—■■■■■■)

EDWARD W. ARDT, Appellee, v. THE ILLINOIS DE-
PARTMENT OF PROFESSIONAL REGULATION,
Appellant.

*Opinion filed December 4, 1992.—Rehearing
denied February 1, 1993.*

140

HEIPLE, J., joined by BILANDIC, J., concurring in part and dissenting in part.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Rita M. Novak and Ann Plunkett-Sheldon, Assistant Attorneys General, of Chicago, of counsel), for appellant.

James D. Goodman, of Chicago, for appellee.

JUSTICE MORAN delivered the opinion of the court:

On July 6, 1989, the Illinois Department of Professional Regulation (Department) filed a complaint against Edward Ardt, a practicing dentist, alleging that he had violated provisions of the Illinois Dental Practice Act (Act) (Ill. Rev. Stat. 1987, ch. 111, par. 2301 et seq.). Specifically, the Department charged that Ardt had violated sections 23 and 45 of the Act and the administra-

tive regulations promulgated thereunder by using the terms "family dentistry," "total comfort," and "quality" in his advertising.

Following an administrative hearing on the charges, Ardt was found to have violated the Act. The Department placed him on probation for two years. During that time, Ardt was to submit copies of all his advertisements to the Department and to publicly display his license, which was stamped to indicate that Ardt was on probation. He was also fined $500.

Ardt filed a complaint in the circuit court of Cook County for administrative review of the Department's decision. Among other things, Ardt challenged the validity of the advertising provisions under which he was charged, claiming that the provisions violated his first amendment right to free speech. Ardt also filed a petition for a stay of the Department's sanctions pending review. The circuit court granted the stay, despite the Department's argument that section 32 of the Act prohibits the suspension of any sanctions during the pendency of judicial review. The Department filed an interlocutory appeal seeking reversal of the stay order. That appeal was later consolidated with Ardt's appeal from the trial court's decision affirming the Department's determination on the merits.

The appellate court affirmed as modified to reflect its ruling that the unamended section of the administrative regulations which had unqualifiedly prohibited use of the term "family dentistry" in advertising was overly broad and thus unconstitutional (218 Ill. App. 3d 61). This court granted the Department's petition for leave to appeal (134 Ill. 2d Rules 315, 317).

The issues before us are whether: (1) the circuit court had the authority to enter a stay, and (2) certain advertising provisions of the Dental Practice Act are unconstitutional. We affirm.

## Section 32 of the Dental Practice Act

The Illinois Constitution of 1970 grants "original jurisdiction of all justiciable matters" to the circuit courts, and further states that the courts "shall have such power to review administrative action as provided by law." (Ill. Const. 1970, art. VI, §9.) Pursuant to this grant of authority, the General Assembly enacted the Administrative Review Law, a provision of which empowers the circuit court to stay decisions of the administrative agency pending final disposition of the case upon judicial review. (Ill. Rev. Stat. 1987, ch. 110, par. 3—111(a)(1).) Section 32 of the Act provides that all administrative decisions of the Department are subject to judicial review according to provisions of the Administrative Review Law. (Ill. Rev. Stat. 1987, ch. 111, par. 2332.) However, section 32 makes the following exception:

> "During the pendency and hearing of any and all judicial proceedings incident to such disciplinary action any sanctions imposed upon the accused by the Department shall remain in full force and effect." Ill. Rev. Stat. 1987, ch. 111, par. 2332.

The circuit court found section 32 constitutional. Nevertheless, the court held that the section applies unconditionally only to situations where a dentist's professional competence is in question. Finding that there was no potential harm to the public during the pendency of the appeal and that Dr. Ardt's practice would suffer if he were forced to display his probationary license during that time, the court granted a stay of the sanctions.

Upon review, the appellate court determined that, despite the prohibition of section 32, the circuit court had the authority to grant a stay pending judicial review. The court reached its conclusion by reasoning that equity may be invoked to protect constitutionally guaranteed liberties, and Ardt had asserted a violation of his right

to free speech. The court further concluded that, because section 32 restricts the equitable power of the court to issue a stay where appropriate, the statute improperly infringes on the power of the judiciary and consequently is unconstitutional.

The Department contends that the appellate court's decision misapprehends the basic character of judicial authority in the context of judicial review of an administrative decision. According to the Department, a court exercising special statutory jurisdiction must comply strictly with provisions of the empowering statute. In defense of its position, the Department cites *Fredman*, in which this court held that a court exercising special statutory jurisdiction "is limited to the language of the act conferring it and the court has no powers from any other source." (*Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 210.) The *Fredman* court was concerned with a jurisdictional requirement for judicial review set out in the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 265 (now Ill. Rev. Stat. 1991, ch. 110, par. 3—103)). Section 2 mandated that judicial review be sought within 35 days after service of the administrative agency's decision. The *Fredman* court held that, unless the statutory mode of procedure is strictly pursued, no jurisdiction to review administrative decisions is conferred on a court. In the case before us, we are concerned not with a condition precedent to a court's subject matter jurisdiction, but rather with the statutory prohibition of a court's exercise of its power to grant injunctive relief once the court's jurisdiction has attached. Thus, the decision in *Fredman* does not bear directly on the question before us.

The Department also cites *Levy v. Industrial Comm'n* (1931), 346 Ill. 49, for the proposition that the authority of a circuit court exercising special jurisdiction

to make any order must be found in the empowering statute. The issue in *Levy*, however, was whether the court had the power to modify a statutory writ in order to gain personal jurisdiction over the litigants. Inasmuch as it concerned the exercise of a court's powers prior to gaining jurisdiction, *Levy* is not applicable to the case at bar.

The Department also urges our consideration of *People v. Byrnes* (1975), 34 Ill. App. 3d 983. In *Byrnes* the appellate court found that the circuit court was without authority to dismiss criminal charges prior to trial. Instead, such authority rested at common law with the Attorney General until it passed by statute to the State's Attorney. In the present case we are concerned not with a power which the court did not possess at common law, but rather with a traditional power of the court: that of granting injunctive relief. Consequently, we find *Byrnes* inapposite to the issue under consideration.

The Department further argues for the applicability of the holding in *People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517. *Arlington Park Race Track* was concerned with the court's entry of a permanent injunction in a civil rights proceeding. In that case, the appellate court found that, under the applicable statute, the circuit court did not have subject matter jurisdiction to grant a permanent injunction during the pendency of the administrative proceeding. In the case before us, we are concerned with a stay granted after the termination of administrative proceedings, when the circuit court had subject matter jurisdiction.

Subject matter jurisdiction, which is conferred on courts by the constitution or by statute (*Fredman*, 109 Ill. 2d at 210), refers to the power of courts to hear and decide the type of case presented (*Faris v. Faris* (1966), 35 Ill. 2d 305, 309). When a statute confers on a court

special jurisdiction not arising out of the common law, that jurisdiction is limited to the language of the act conferring it. (*Central Illinois Public Service Co. v. Industrial Comm'n* (1920), 293 Ill. 62, 65-66.) The court has no powers from any other source to hear the case, and if the mode of procedure prescribed by statute is not followed, no jurisdiction is conferred on the circuit court. *Fredman*, 109 Ill. 2d at 210.

However, a court's inherent power is not synonymous with its subject matter jurisdiction. (*Miller v. General Telephone Co.* (1975), 29 Ill. App. 3d 848, 853.) A court exercising special jurisdiction retains its traditional equitable power. (*Cahokia Sportservice, Inc. v. Liquor Control Comm'n* (1975), 32 Ill. App. 3d 801, 805.) This inherent equitable power, which is derived from the historic power of equity courts, can neither be taken away nor abridged by the legislature. 20 Am. Jur. 2d *Courts* §78 (Supp. 1992).

A stay or temporary restraining order is a type of injunction, which is distinctly an equitable remedy. (42 Am. Jur. 2d *Injunctions* §§1, 2 (1969).) During the pendency of a case before it, a court has the inherent power to issue temporary restraining orders or preliminary injunctions. (*Kraft v. Solon* (1975), 32 Ill. App. 3d 557, 561.) Such injunctive relief is proper when the constitutionality of a statute is challenged. (*Adams Apple Distributing Co. v. Zagel* (1986), 152 Ill. App. 3d 157, 160.) We conclude that the circuit court had the inherent equitable power to issue a stay pending judicial review.

The Department argues, however, that if a court had the inherent power to issue a stay pending judicial review, it would not have been necessary to specifically provide for such a stay in the Administrative Review Law. However, the Department mistakes the intention with which the legislature enacted section 3—111 of the Administrative Review Law (Ill. Rev. Stat. 1987, ch.

110, par. 3—111(a)(1)). The provision was intended to give the court broad judicial discretion to grant or deny a stay of an administrative decision without applying traditional standards applicable for the issuance of injunctions. *Gorr v. Board of Fire & Police Commissioners* (1984), 129 Ill. App. 3d 327.

The Department further argues that section 41 of the Medical Practice Act of 1987 (Ill. Rev. Stat. 1987, ch. 111, par. 4400—41), which is identical to section 32, has consistently been interpreted to prohibit the entry of stays pending the judicial review of administrative decisions. The Department cites *Stojanoff v. Department of Registration & Education* (1980), 79 Ill. 2d 394, as a case in point. The plaintiff in *Stojanoff* was mistakenly, and through no wrongdoing of his own, granted a medical license despite his lack of the proper academic qualifications. Basing its decision upon the legislative intent to protect the public from unqualified physicians, this court upheld the continued revocation of the plaintiff's license pending remand to the administrative agency. Thus, in *Stojanoff* the issue was not whether the circuit court had the inherent authority to grant a stay of an administrative action pending judicial review, but rather whether the court properly refused to grant such a stay pending further administrative proceedings.

The Department further relies upon *Bickham v. Selcke* (1991), 216 Ill. App. 3d 453, *Pundy v. Department of Professional Regulation* (1991), 211 Ill. App. 3d 475, *Blumstein v. Clayton* (1985), 139 Ill. App. 3d 611, and *Ming Kow Hah v. Stackler* (1978), 66 Ill. App. 3d 947. The *Ming Kow Hah* court, as a matter of statutory construction, determined that the Medical Practice Act's prohibition of a stay pending judicial review prevailed over the section of the Administrative Review Act providing for such a stay (Ill. Rev. Stat. 1975, ch. 110, par.

275(1)(a) (now Ill. Rev. Stat. 1991, ch. 110, par. 3–111(a)(1))).

*Ming Kow Hah* did not address constitutional arguments. However, the constitutionality of the legislative provision was at issue in *Blumstein*, where the court found that the Medical Practice Act's prohibition of stays did not violate the plaintiff's right to due process or equal protection. The court reasoned that the plaintiff was given a full hearing, and that the State may regulate the medical profession due to its interest in protecting the health and welfare of the public. *Blumstein*, 139 Ill. App. 3d 611.

The *Blumstein* court also addressed the argument that the section of the Medical Practice Act prohibiting stays invades the inherent power of the judiciary by negating its power to balance equities and maintain the status quo between the parties. (*Blumstein*, 139 Ill. App. 3d at 615.) The court acknowledged that the prohibition of stays negates a traditional power of the court. However, the court determined that legislative limitation of that power was specifically authorized by the constitution, which provides that the courts "shall have such power to review administrative action as provided by law." (Ill. Const. 1970, art. VI, §9.) The *Blumstein* court interpreted section 9 to mean that courts have power to review administrative actions only as provided by statute. That is not our interpretation of the provision. Circuit courts have traditionally used *mandamus, certiorari*, injunction and other actions as a means of reviewing the decisions of administrative agencies. (*Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 883.) The legislature enacted the Administrative Review Law in order to provide a simple single review from specified administrative decisions. (*Chestnut v. Lodge* (1966), 34 Ill. 2d 567, 571.) Other modes of review formerly available to agencies adopting

the Administrative Review Law are no longer available. (Fins, *The Illinois Law Revision Comm'n*, 29 DePaul L. Rev. 443, 461 (1980).) However, the common law writ of *certiorari* is employed for the review of administrative proceedings where no statutory provision is available for judicial review. (*Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529.) Section 9 provides that the court may additionally gain subject matter jurisdiction through procedures specified by statute; it does not limit the court's traditional powers once it has gained jurisdiction.

In the most recent cases cited by the Department, the *Bickham* and *Pundy* courts found that section 41 of the Medical Practice Act did not violate the plaintiff physicians' due process rights, as sanctions were imposed only after a full hearing. The *Pundy* court also cited with approval *Blumstein*'s finding that the section does not offend a physician's right to equal protection. *Pundy*, 211 Ill. App. 3d at 482.

Courts in other jurisdictions have also found that similar statutory provisions prohibiting stays pending judicial review do not violate due process or equal protection. (See *Commission on Medical Discipline v. Stillman* (1981), 291 Md. 390, 435 A.2d 747; *Board of Medical Quality Assurance v. Superior Court* (1980), 114 Cal. App. 3d 272, 170 Cal. Rptr. 468; *Flynn v. Board of Registration in Optometry* (1945), 320 Mass. 29, 67 N.E.2d 846.) In *Stillman*, the court additionally held that, because reasonable judicial review of administrative decisions was provided for by statute, the prohibition of stays did not infringe upon the judiciary's inherent power to review administrative actions for arbitrariness, illegality, capriciousness and unreasonableness. The court pointed out, however, that physicians who were merely placed on probation were not precluded from obtaining a stay under the relevant statute. *Stillman*, 291 Md. at 291, 435 A.2d at 756.

The United States Supreme Court examined the effect on due process of a statutory prohibition of stays in *Porter v. Investors Syndicate* (1932), 286 U.S. 461, 76 L. Ed. 1226, 52 S. Ct. 617. In that case, the Court overcame due process concerns by construing a Montana statute in such a way as to allow a court to stay revocation of a permit pending judicial review. The Court stated that "where either the plain provisions of the statute [citation] or the decisions of the state court interpreting the act [citation] precludes [*sic*] a supersedeas or stay until the legislative process is completed by the final action of the reviewing court, due process is not afforded \*\*\*." *Porter*, 286 U.S. at 471, 76 L. Ed. at 1232, 52 S. Ct. at 621.

Addressing State constitutional concerns, the court in *Smothers v. Lewis* (Ky. 1984), 672 S.W.2d 62, held unconstitutional a statute forbidding courts to stay, pending appeal, the revocation or suspension of liquor licenses by the State alcoholic beverage control board. The *Smothers* court stated that, in addition to judicial and rulemaking powers vested in the court system by the State constitution, the courts have inherent powers to do that which is reasonably necessary within the scope of their jurisdiction. The court concluded:

"Once the administrative action has ended and the right to appeal arises the legislature is void of any right to control a subsequent appellate judicial proceeding. The judicial rules have come into play and have preempted the field." (*Smothers*, 672 S.W.2d at 64.)

We agree with the *Smothers* court that a court of review has the inherent power to issue injunctions. We further agree that to allow a court the ability to right a possible wrong by granting an appeal while denying it the power to defer imposition of a penalty attached to that wrong would be to deny the court its inherent right to make effective its constitutional grant of power.

The *Smothers* court based its conclusions in large part upon its State constitutional provision declaring the separation of powers. Article II, section 1, of the Illinois Constitution of 1970 states: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, §1.) This court has recognized that the doctrine of separation of powers does not forbid every exercise of one branch's functions by another. Nevertheless, each branch of government must be kept free from the coercive influence of the other branches. (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 58-59.) The General Assembly is expressly prohibited from exercising judicial power. It has power to enact laws governing judicial practice only where such laws do not infringe upon the inherent powers of the judiciary. (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149.) We have determined that the power to grant injunctive relief in cases over which it has jurisdiction is inherent in a circuit court. Consequently, we hold, to the extent that it restricts the inherent power of the court to issue a stay where appropriate, that section 32 of the Dental Practice Act is unconstitutional.

### Section 45 of the Dental Practice Act

Dr. Ardt contends that several provisions of the Act contravene his first amendment right to free commercial speech. Under section 45 of the Act, a dentist may advertise certain information "which a reasonable person might regard as relevant in determining whether to seek the dentist's services." (Ill. Rev. Stat. 1987, ch. 111, par. 2345(h).) However, it is unlawful for the dentist:

> "(1) To use testimonials or claims of superior quality of care to entice the public;
>
> (2) To advertise in any way to practice dentistry without causing pain;

***

*** Nor shall the dentist use statements which contain false, fraudulent, deceptive or misleading material or guarantees of success ***." Ill. Rev. Stat. 1987, ch. 111, par. 2345.

Also in effect during the time at which Ardt advertised in an allegedly improper manner was an administrative regulation promulgated pursuant to the Act, which stated:

"Advertising may not use language suggesting a dental specialty which does not exist under the Dental Practice Act. Example: Family Dentistry, Family Practice." (68 Ill. Adm. Code §1220.421(a)(3) (Supp. 1988).)

That section of the regulation was later changed to read as follows:

"Advertising shall not use language suggesting a dental specialty which is not specified in Section 1220.320 of this Part unless it contains the disclaimer required in subsection (g), above [licensed to practice as a general dentist in Illinois]. Examples of language requiring disclaimer: family dentistry ***." 68 Ill. Adm. Code §1220.421(h) (1991).

The appellate court held that the previous administrative regulation, which was in effect when Ardt publicized his allegedly improper advertising, was an unconstitutional abridgement of Ardt's freedom of speech to the extent that it categorically barred use of the term "family dentistry." The court found that the term was only potentially misleading, as it could apply simply to the dentist's client base rather than to a dental specialty. We agree with the appellate court that such a total ban of the term is unconstitutional. (See *In re R.M.J.* (1982), 455 U.S. 191, 71 L. Ed. 2d 64, 102 S. Ct. 929 (potentially misleading terms may be acceptable if presented in a way that is not deceptive).) We agree also that the 1989 regulation should not be given retroactive effect. The Department does not contest the appellate court's

conclusion. Thus, the only remaining question is whether the Department's imposition of sanctions for Ardt's use of the terms "quality dentistry" and "total comfort" was an unconstitutional violation of Ardt's right to free commercial speech.

The United States Supreme Court has held that commercial speech, like other varieties of speech, is protected under the first amendment. (*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* (1976), 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817.) The Court has summarized the commercial speech doctrine as follows:

> "Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information, *e.g.*, a listing of areas of practice, if the information also may be presented in a way that is not deceptive." (*In re R.M.J.*, 455 U.S. at 203, 71 L. Ed. 2d at 74, 102 S. Ct. at 937.)

Thus, a State may not completely suppress the dissemination of truthful information about lawful activity. Nevertheless, commercial speech may be regulated by the government, and advertising that is false, deceptive or misleading is subject to restraint. (*Bates v. State Bar* (1977), 433 U.S. 350, 383, 53 L. Ed. 2d 810, 835, 97 S. Ct. 2691, 2709.) The *Bates* Court noted, without deciding, that "advertising claims as to the quality of services *** are not susceptible of measurement or verification; accordingly, such claims may be so likely to be misleading as to warrant restriction." *Bates*, 433 U.S. at 383-84, 53 L. Ed. 2d at 835-36, 97 S. Ct. at 2709.

Section 45 of the Act states in part that it is unlawful for a licensed dentist "[t]o use testimonials or claims of superior quality of care to entice the public." (Ill. Rev. Stat. 1987, ch. 111, par. 2345(1).) Ardt's advertisements were printed in a telephone directory, on his business cards, and on the door of his office. Dr. Ardt states that it is unclear which words in his advertising implied "superior quality of care." However, Ardt's telephone directory advertisement announced that he provided "quality dentistry for all family needs and all ages." We believe that the expression "quality dentistry" implies superior quality and is inherently misleading, as it cannot be measured or tested empirically. All dentists must meet prescribed standards in order to be licensed. Whether the quality of any one dentist's services is superior to that of his colleagues is a matter of opinion for the dentist's patients to decide after treatment. Prior to treatment they should not be misled by advertising which might prove to make an empty claim. For the above reasons, we agree with the appellate court that the Department's prohibition of the term "quality dentistry" is constitutional and does not violate Ardt's first amendment right to free commercial speech.

Section 45 further prohibits the dentist from advertising "in any way to practice dentistry without causing pain." (Ill. Rev. Stat. 1987, ch. 111, par. 2345(2).) Dr. Ardt's business card stated: "We use analgesic techniques to provide total comfort for the relief of the anxieties and fears many patients have of dental treatment." His telephone directory advertisements promised: "Total comfort available with anesthetic techniques." Although Ardt argues that "total comfort" is not synonymous with lack of pain, nevertheless analgesic and anesthetic techniques are employed exclusively for the relief or blocking of pain. Blakiston's Gould

Medical Dictionary 70, 75 (4th ed. 1979), provides the following definitions:

"analgesic *** 1. Relieving pain."

"anesthetic *** 1. Causing anesthesia. 2. Insensible to touch, pain, or other stimulation."

In the context of Ardt's advertising, "total comfort" can be equated with painless dental procedures. A patient may hope that his pain will be relieved or blocked by dental techniques. However, to promise "total comfort" implies that the patient will experience no pain or even discomfort. Such an inducement is misleading in itself.

Dr. Ardt attempts to analogize his case with that of the attorney in *Peel v. Attorney Registration & Disciplinary Comm'n* (1990), 496 U.S. 91, 110 L. Ed. 2d 83, 110 S. Ct. 2281. *Peel*, however, concerned a letterhead which stated that the attorney was "Certified [as a] Civil Trial Specialist By the National Board of Trial Advocacy." Finding that the information provided was true, verifiable, and only potentially misleading, the Supreme Court held that a State may not completely ban statements unless they are actually or inherently misleading. (*Peel*, 496 U.S. at 111, 110 L. Ed. 2d at 101, 110 S. Ct. at 2293 (Marshall, J., concurring, joined·by Brennan, J.).) Having found Dr. Ardt's use of the term "total comfort" to be inherently misleading and thus capable of State regulation, we hold that Ardt's rights were not violated by the Department's prohibition of the term in his advertising.

Finally, Dr. Ardt argues that section 45 of the Act and section 1220.421 of title 68 of the Administrative Code are void for vagueness. According to Ardt, two broadly written portions of section 45 fail to adequately inform the dentist of which advertising is permissible and which advertising is prohibited.

Section 45 provides that dentists may advertise, *inter alia*:

"(a) The dental services available;

\* \* \*

(h) Other information about the dentist, dentist's practice or the types of dental services which the dentist offers to perform which a reasonable person might regard as relevant in determining whether to seek the dentist's services." (Ill. Rev. Stat. 1987, ch. 111, pars. 2345(a), (h).)

The section also states:

"It is unlawful for any dentist licensed under this Act:

(1) To use testimonials or claims of superior quality of care to entice the public;

\* \* \*

This Act does not authorize the advertising of dental services when the offeror of such services is not a dentist. Nor shall the dentist use statements which contain false, fraudulent, deceptive or misleading material or guarantees of success, statements which play upon the vanity or fears of the public, or statements which promote or produce unfair competition." (Ill. Rev. Stat. 1987, ch. 111, par. 2345.)

Ardt asserts that these clauses are confusing, contradictory, indefinite and uncertain. Ardt contends that, because section 45 permits and forbids doing acts in terms so vague that a person of ordinary intelligence must guess at their meaning, the section denies due process of law.

In the course of its examination of the constitutionality of statutes, the United States Supreme Court has evolved a void-for-vagueness doctrine. Under this doctrine, the Court has strictly prohibited statutes which burden speech in terms that are so vague that they might include protected speech in their prohibition or leave an individual without clear guidance as to which kind of speech can be punished. (J. Nowak, R. Rotunda & J. Young, Constitutional Law 872 (2d ed. 1983).) As a matter of due process, a law is void if it is so vague that

persons "of common intelligence must necessarily guess at its meaning and differ as to its application." (*Connally v. General Construction Co.* (1926), 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126, 127; L. Tribe, American Constitutional Law §12—31, at 1033 (2d ed. 1988).) We could not sustain section 45 if we agreed with Ardt's contention that persons of ordinary intelligence would be unable to understand what it allows and what it prohibits. But we do not agree.

The prohibiting clause cited by Ardt dictates that the dentist shall not use "false, fraudulent, deceptive or misleading material." We believe that the terms "false," "fraudulent," and "deceptive" are readily understandable by a person of ordinary intelligence. Examples of misleading advertising are listed in previous clauses of section 45, which proscribe claims of superior quality of care and claims of practicing dentistry without pain. We do not believe that those clauses could have been drafted more clearly. (See *United States v. Petrillo* (1947), 332 U.S. 1, 7-8, 91 L. Ed. 1877, 1882-83, 67 S. Ct. 1538, 1541-42.) It was specifically for violating those instances of prohibited advertising that Ardt was charged.

This court has previously held that a statute does not violate the due process clauses of the United States or the Illinois Constitution, on grounds of vagueness, if it is explicit enough to serve as a guide to those who must comply with it. (*Chastek v. Anderson* (1981), 83 Ill. 2d 502, 507.) In *Chastek*, the court found that the statute's use of the term "unprofessional conduct" was found to be sufficiently clear in itself, and that there was no need to catalogue all the possible types of professional misconduct. We find that section 45, and the regulations promulgated in connection with it, give a dentist sufficient guidance so that he can avoid advertising prohibited information. Consequently, we hold that section 45 is not unconstitutionally vague.

For the above reasons, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE HEIPLE, concurring in part and dissenting in part:

I agree with the majority's conclusion that trial courts may issue stays involving the Dental Practice Act in appropriate circumstances. The majority, however, in approving the prohibition of dental advertisements using the terms "quality dentistry" and "total comfort," has unnecessarily and unconstitutionally limited an individual's right to free commercial speech.

The relevant facts are that Dr. Edward Ardt, a practicing dentist, advertised in various ways stating, *inter alia*, "quality dentistry for all family needs and all ages" and "Total comfort available with anesthetic techniques." Section 45 of the Dental Practice Act states that it is unlawful for a dentist to advertise using misleading statements. Specifically, this section prohibits a dentist from claiming superior quality of care and from advertising the ability to practice dentistry without causing pain. (Ill. Rev. Stat. 1987, ch. 111, par. 2345.) The majority, focusing on the terms "quality dentistry" and "total comfort" concludes that advertising with such terms is misleading and thus may be prohibited.

Commercial speech, while protected under the first amendment, may be restrained if it is of a false, deceptive or misleading character. (*Bates v. State Bar* (1977), 433 U.S. 350, 383, 53 L. Ed. 2d 810, 835, 97 S. Ct. 2691, 2709.) Thus, the focus of the present case centers on whether advertising "quality dentistry" and "total comfort" is false, deceptive or misleading to the general public.

The term "quality dentistry" carries the obvious implication that the dental work is superior. The term "to-

tal comfort" carries the implication that the treatment is free of pain.

Up to this moment, what has been totally overlooked in these proceedings is that Dr. Ardt's claims may be true. Isn't it possible that Dr. Ardt's dental services may be superior? Isn't it also possible that "with anesthetic techniques," his dental services may be performed without pain? My question to the Illinois Department of Professional Regulation and to the majority of this court is a simple one. If Dr. Ardt is, in fact, offering quality dentistry that is free of pain, how can his claim be misleading? The decision in this case should go beyond a mere analysis of words. It should focus on the facts. That has not been done. Advertising is not misleading if it is true. Truth is a defense in libel and slander cases. Should it not also be a defense in a claimed case of misleading advertising?

The restrictions on dental advertising in this and similar cases are claimed to be justified on the grounds that the public needs this type of protection and that without it they will be taken advantage of, conned, gulled, and lured into the offices of unscrupulous dentists. The plain and unvarnished truth of the matter is that these restrictions and sanctions are in place as a service to the dental profession to limit and restrict competition among dentists. All else is window dressing. Beyond that, the law presumes that the general public are a bunch of simple minded peasants who, if they can read and write, are too dumb to protect themselves from the wiles of a dentist who offers quality care and pain-free treatment. While there are limits, of course, I attribute a higher degree of sophistication to my fellow countrymen than this case implies.

Dr. Ardt has been a practicing dentist for over a quarter of a century. He is a graduate of an approved college of dentistry. He long ago passed his state licens-

160

ing examination and met all state requirements for practicing dentistry in Illinois. He is not being sanctioned in this case for dental malpractice. He is being sanctioned for misleading advertising. That has never been established.

Accordingly, I respectfully dissent from that portion of the majority opinion which concludes without proof that Dr. Ardt engaged in misleading advertising.

JUSTICE BILANDIC joins in this partial concurrence and partial dissent.